### SETTLEMENT AGREEMENT
### BAILEY v. AK STEEL CORPORATION

**I.     Introduction**

This Settlement Agreement is designed to transfer six hundred sixty-three million dollars to a trust established by Plaintiffs and controlled by trustees, for the provision of Post-Retirement Welfare Benefits for the benefit of the Plaintiffs and the Class Members who they represent and also to relieve AK Steel of any future liability for Post-Retirement Welfare Benefits for these Plaintiffs. This Settlement Agreement is made for the sole purpose of settling the Litigation on a class-wide basis. This Settlement Agreement is made in compromise of disputed claims. This Settlement Agreement is intended to fully, finally and forever resolve, discharge and settle the Released Claims upon the terms and conditions set forth below.

Because the Litigation is a class action, this Settlement Agreement must receive preliminary and final approval by the Court. The Parties have agreed to resolve the Litigation by this Settlement Agreement, but to the extent it is not approved, the Parties agree that each of them reserves all rights to challenge all claims, allegations and defenses in the Litigation upon all procedural, legal and factual grounds and to assert all claims, defenses and privileges. All Parties agree that the other Parties retain these rights, and they agree not to take a position to the contrary.

**II.    Contingency**

This Settlement is contingent on Court approval of the Class Representatives' motion for class certification of two classes, as defined below, which the Court has indicated it will grant.

### III. The Parties to this Settlement Agreement

This Settlement Agreement is made by and among the following Parties: (i) the Hourly Class Representatives (on behalf of themselves and on behalf of the entire proposed Hourly Class, if certified) with the guidance and approval of Class Counsel, (ii) the Salaried Class Representatives (on behalf of themselves and on behalf of the entire proposed Salaried Class, if certified) with the guidance and approval of Class Counsel and (iii) AK Steel.

### IV. Announced Changes to the AK Steel Retiree Health Plan and the Filing of the Litigation

AK Steel's position is that the integrated steel industry, of which AK Steel is a part, has undergone a sea change in the past decade. Integrated steel manufacturers traditionally have high fixed costs, a large part of which are payments for Post-Retirement Welfare Benefits to retirees. When the price for steel declines, companies with costs that are too high have found themselves in positions where they had no option but to declare bankruptcy. This happened in the past decade to the National Steel Company, LTV Steel Corporation and the Bethlehem Steel Corporation, among others. Each went out of business and their collective 250,000 retirees were left without any retiree benefits provided by their former employers.

The purchasers of the assets of these companies negotiated with labor unions a new industry standard retiree health package for future retirees and they agreed to contribute very modest amounts for the past retirees of National, LTV and Bethlehem based primarily on future profitability. Companies in the integrated steel industry such as AK Steel that have not shed their retiree welfare benefits through bankruptcy or through purchasing assets of bankrupt companies were left at a competitive disadvantage by paying substantially more for health benefits for retirees than their competitors.

Plaintiffs' position is that the employees earned their post-retirement health benefits through many years of service with AK Steel, or one of its predecessors, and that these benefits became vested upon their retirement. These benefits were negotiated in lieu of wages and other benefits.

AK Steel decided that it had to change its cost structure to become competitive in the industry. The Company, asserting that it had the right under the applicable Middletown Works collective bargaining agreements and plan documents, announced June 1, 2006 that effective October 1, 2006 it would unilaterally change its retiree benefit plans in a manner that reduced benefits provided to its hourly and salaried retirees formerly represented by the AEIF during their employment with the Company.

Class Representatives Bailey, Pringle, Banks, Fetters, Reichenbach, Schultz, Ratliff, McKinney and Tibbs, on their behalf and behalf of the putative Classes, filed suit on July 18, 2006 in the United States District Court for the Southern District of Ohio (the "Litigation"). The Class Representatives claimed that the Company did not have the unilateral right to make the changes announced on June 1, 2006, and they sought preliminary and permanent injunctions under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), and under Section 502 of the Employee Retirement Income Security Act ("ERISA") to prohibit these changes. On behalf of the putative Hourly Class they sought a preliminary injunction on August 4, 2006 to stop these changes. The District Court granted a preliminary injunction on September 25, 2006, prohibiting the changes for the Hourly Class from going into effect during the pendency of the litigation. The changes for the Salaried Class did go into effect beginning October 1, 2006 and they remain in effect.

AK Steel appealed the grant of the preliminary injunction to the United States Court of Appeals for the Sixth Circuit on September 25, 2006. The case was argued before the Sixth Circuit on July 24, 2007. The Sixth Circuit has yet to issue a decision in that matter. When the tentative settlement of this matter was reached on September 21, 2007, the Parties asked the Sixth Circuit for a stay of its decision pending finalization of this Settlement.

In the Litigation, both Plaintiffs and the Company served initial disclosures, provided detailed answers to written questions, and provided thousands of pages of information to the other that was requested. Numerous depositions have been taken, of each of the Class Representatives and of a number of current and former AK Steel employees. This discovery process allowed the Parties to present and refine their positions on the core issues in dispute.

Consistent with the Court's suggestion from the outset of this Litigation, the Parties have engaged in substantial settlement discussions. These discussions culminated in an initial mediation on July 25, 2007. As a result of these discussions, detailed actuarial data was provided to Plaintiffs and settlement proposals were exchanged. On September 21, 2007, a second mediation session was held where the Parties reached the settlement (which is conditioned on Court approval) reflected in this Settlement Agreement. Throughout these discussions the Class Representatives and Class Counsel have conducted themselves in the same manner as if the two proposed Classes had already been certified and have considered themselves to be acting under the obligations imposed on formally recognized class representatives and class counsel.

## V.    AK Steel's Denial of Wrongdoing or Liability and the Benefits of Settlement

AK Steel denies all of the claims and contentions by the Class Representatives in the Litigation, and AK Steel believes that the evidence supports the Company's position.

Nonetheless, AK Steel has concluded that further conduct of the Litigation would be protracted and expensive. AK Steel has taken into account the uncertainty and risks inherent in any litigation. The Company is also mindful of the inherent problems of proof in overcoming claims and establishing defenses to the claims asserted in the Litigation. AK Steel has therefore determined that it is desirable and beneficial to it that the Litigation be settled by the terms and conditions in this Settlement Agreement.

## VI.     Claims of the Class Representatives and the Benefits of Settlement

The Class Representatives and Class Counsel believe that the claims they have asserted in the Litigation have merit, and they believe that evidence developed to date supports those claims. However, Plaintiffs recognize and acknowledge the expense and length of the type of continued proceedings necessary to prosecute the Litigation against AK Steel through trial and through appeals. Plaintiffs also recognize that AK Steel has asserted defenses to their claims. In addition, Plaintiffs have taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs are also mindful of the inherent problems of proof in establishing, and in overcoming defenses to, the claims they have asserted in the Litigation. One of the significant risks taken into account by the Plaintiffs is that, if AK Steel is successful in the Litigation, it could conclusively establish that the Company has no obligation to pay to them any Post-Retirement Welfare Benefits whatsoever.

Plaintiffs further acknowledge that even were they to obtain a ruling that the Company is obligated to provide Post-Retirement Welfare Benefits, that their continued receipt of such benefits depends upon the long-term future viability of AK Steel and its continued ability to fund such benefits. Creation of the funded VEBA trust contemplated by this Settlement eliminates the future contingent risk of an inability of the Company to pay. Plaintiffs believe that this

Settlement confers substantial benefits upon the Classes in light of these and other factors. Based upon their evaluation, Plaintiffs have determined that the Settlement is fair, reasonable and in the best interest of the Classes.

## VII.    Terms of Settlement Agreement

It is further agreed by and between the Class Representatives (for themselves and the proposed Classes) and AK Steel, with the assistance of their respective counsel, that the Litigation and the Released Claims shall be fully and finally compromised, settled and released; the Litigation shall be dismissed with prejudice; and the Settlement will be implemented upon and subject to the terms and conditions of the Settlement and upon entry of the Judgment.

### 1. Definitions

1.1    "AEIF" means the Armco Employees Independent Federation, Inc.

1.2    "AK Steel" or "the Company" means the AK Steel Corporation, the Defendant in the Litigation, as well as each of its subsidiaries, parents (including without limitation AK Steel Holding Corporation), predecessors (including without limitation Armco, Inc., Armco Steel Corporation, and Armco Steel Company, L.P.), successors, purchasers, assigns and affiliates.

1.3    "AK Steel Releasees" means AK Steel (as defined in Section 1.2, above), as well as its divisions, joint ventures and assigns, retiree health and welfare benefit plans, its Benefit Plans Administrative Committee, and each of these entities' past or present directors, officers, employees, partners, members, principals, fiduciaries, administrators, agents, underwriters, insurers, co-insurers, reinsurers, shareholders, attorneys, accountants or auditors, banks or investments banks, associates, and personal or legal representatives.

1.4     "Class Counsel" means the law firms of O'Donoghue & O'Donoghue LLP (and Sally M. Tedrow, Francis J. Martorana and Jennifer R. Simon in particular) and Cook, Portune & Logothetis (and David M. Cook in particular), who as of this writing are the proposed class counsel in this proceeding.

1.5     "Class Member" means a person who is a member of the proposed Hourly Class or the proposed Salaried Class.

1.6     "Class Notice" means a notice entitled "Notice To Class Members Regarding The Settlement Of The Class Action and Notice Of Hearing On Proposed Settlement" to be approved by the Court.

1.7     "Class Representatives" means Michael Bailey, Rudolph Pringle, Ronnie Banks, James Fetters, Carl Reichenbach, Jesse Schultz, Scott Ratliff, James McKinney and Richard Tibbs, who as of this writing are the proposed class representatives in this proceeding.

1.8     "Clerk of Court" means the Clerk of Court for the United States District Court, Southern District of Ohio.

1.9     "Contingent Beneficiaries" means any employee or retiree of the Company, whether or not the employee or retiree was ever a member of the Hourly or Salaried Class.

1.10    "Court" means the United States District Court for the Southern District of Ohio.

1.11    "Effective Date" means the date on which the Judgment is entered by the Court.

1.12    "Hourly Class Representatives" means Michael Bailey, Rudolph Pringle, Ronnie Banks, James Fetters, Carl Reichenbach, Jesse Schultz, and Scott Ratliff.

1.13    "IAM" means International Association of Machinists and Aerospace Workers, Local Lodge 1943.

1.14   "Intended Beneficiaries" means the members of the proposed Hourly Class and the proposed Salaried Class and their eligible dependents.

1.15   "Health and Welfare Benefits" or "Post-Retirement Welfare Benefits" means any and all benefits related to health care (including prescription drugs, major medical, and other medical expense), health insurance premium reimbursements, life insurance, dental insurance, or vision insurance received by or claimed by or on behalf of either of the Classes from AK Steel. It shall also include the expenses incurred in providing and administering such benefits, including, without limitation, claims processing costs, expenses associated with the enrollment and maintenance of data regarding covered individuals, collection of any required contributions from covered individuals, stop loss insurance premiums and premium taxes. If and to the extent any law hereafter enacted imposes any obligation on an employer to provide insurance, or to pay a tax in lieu thereof, the Health and Welfare Benefits provided through the VEBA shall be deemed to meet such obligation and/or to constitute benefits provided by the Company for purposes of such obligation or tax.

1.16   "Hourly Class" means retirees, or surviving spouses of retirees, who (a) worked for AK Steel or one of its predecessors at the Middletown Works (and related facilities covered by the collective bargaining agreement for the Middletown Works) under a collective bargaining agreement covering hourly employees, negotiated between AK Steel or one of its predecessors   (including Armco, Inc., Armco Steel Corporation, and Armco Steel Company, L.P.) and Armco Employees Independent Federation, Inc. ("AEIF") or the IAM; (b) retired from AK Steel between January 1, 1950 and May 31, 2007; (c) were eligible to participate in the AK Steel Hourly Retiree Hospital and Medical Benefits Plan

or a predecessor plan at the time they retired; and (d) in the case of either retirees or surviving spouses, continue to be eligible to participate as of the Effective Date.

1.17   "Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Proposed Notice" means a joint motion filed with the Court to have the Court preliminarily approve this Settlement, and to enter the Preliminary Approval Order, and to approve a Class Notice to be served on Class Members.

1.18   "Judgment" means the judgment rendered by the Court approving this Settlement in its entirety without change (unless the Company and the Class Representatives have expressly consented to such changes in writing).

1.19   "Last Known Address" means the most recent mailing address for a Class Member as such information is contained in the pension records maintained by AK Steel.

1.20   "Litigation" or the "Lawsuit" shall mean the lawsuit currently entitled *Bailey et al. v. AK Steel Corporation*, United States District Court for the Southern District of Ohio, Case No. 1:06cv468.

1.21   "Notice Administrator" means the administrator selected at the discretion of AK Steel responsible for mailing of certain notices pursuant to this Settlement.

1.22   "Notice Mailing Deadline" shall be the date seven (7) days after the Preliminary Approval Date (unless otherwise stated in the Preliminary Approval Order).

1.23   "Notice of Final Approval to Class Members" means a notice to be sent to Class Members following the Effective Date, to be approved by the Court.

1.24   "Notice Response Deadline" shall be the date forty-five (45) days after the Class Notice is mailed to the Class Members.

1.25   "Parties" means the Class Representatives and AK Steel.

1.26    "Plaintiffs" means the Class Representatives and the Members of the proposed Hourly
        Class and the proposed Salaried Class.

1.27    "Post-Retirement Welfare Benefits" has the definition described in Section 1.15.

1.28    "Post-Retirement Welfare Obligations" means the obligation to pay for Post-Retirement
        Welfare Benefits or Health and Welfare Benefits.

1.29    "Preliminary Approval Date" shall mean the date on which the Court enters the
        Preliminary Approval Order.

1.30    "Preliminary Approval Order" shall mean that Order described in Sections 5.2.1 and
        5.2.2.

1.31    "Released Claims", including unknown claims as referenced in Section 4.2.2, shall mean
        all claims, known or unknown, by all Class Members, for any type of relief against the
        AK Steel Releasees for declaratory relief, damages, unpaid costs, penalties, liquidated
        damages, punitive damages, interest, attorney fees, litigation costs, or any other monetary
        remedy, as well as injunctive relief, restitution, or other equitable relief based on the
        following (potentially overlapping) categories of claims: (a) any and all claims for any
        Health and Welfare Benefits; and (b) any and all claims for payment of medical benefits,
        major medical benefits, managed care benefits, prescription drug benefits, premium
        reimbursement, life insurance benefits, dental insurance benefits, or vision insurance
        benefits; and (c) any and all claims for declaratory or injunctive relief in opposition to
        AK Steel's asserted right to modify, reduce or terminate the Health and Welfare Benefits
        of the Class Members.

It is understood and agreed that the Released Claims do not include rights or claims to vested pension benefits, claims to enforce the terms of this Settlement Agreement, or individual benefit claims incurred by Class Members prior to the Effective Date.

It is further understood and agreed that the Released Claims include all claims under any contract, collective bargaining agreement, summary plan description, statute, including without limitation ERISA or the LMRA, or any other theory or basis.

1.32   "Salaried Class" means retirees, or surviving spouses of retirees, who (a) worked for AK Steel or one of its predecessors at the Middletown Works (and related facilities covered by the collective bargaining agreement for the Middletown Works) under a collective bargaining agreement covering salaried employees, negotiated between AK Steel or one of its predecessors and Armco Employees Independent Federation, Inc. ("AEIF"); (b) retired from AK Steel between January 1, 1984 and on or before May 31, 2007; (c) were eligible to participate in the AK Steel Corporation Hospital and Medical Benefits Plan (for AEIF Salaried Represented Pensioners, Surviving Spouse Benefit Recipients and Eligible Dependents) or a predecessor plan, at the time they retired; and (d) in the case of either retirees or surviving spouses, continue to be eligible to participate as of the Effective Date.

1.33   "Salaried Class Representatives" mean James McKinney and Richard Tibbs.

1.34   "Settlement Hearing" or "Fairness and Good Faith Determination Hearing" means a hearing set by the Court to take place on or after the date which is 45 days after the Notice Response Deadline for the purpose of (i) determining the fairness, adequacy and

reasonableness of the Settlement pursuant to class action procedures and requirements; (ii) determining the good faith of the Settlement; and (iii) entering Judgment.

1.35    "Voluntary Employees Beneficiary Association" or "VEBA" means the trust created pursuant to this Settlement, the funds of which will be used to provide Health and Welfare Benefits under a new and revised plan of benefits to be created by the Trustees of the VEBA. The VEBA will expressly provide that, absent one or more of the contingencies in Sections 2.2.4 and 2.2.5 of this Settlement Agreement, only Intended Beneficiaries are eligible to receive benefits from the VEBA. However, the VEBA also will expressly provide that, in the event that one or more of the contingencies described in Sections 2.2.4 and 2.2.5 of this Settlement Agreement occurs, Contingent Beneficiaries also will be entitled to receive benefits from the assets of the VEBA as described in those Sections. The VEBA will be an organization described in Section 501(c)(9) of the Internal Revenue Code.

## 2.    Consideration to Class Members

### 2.1    *Creation and Funding of VEBA*

2.1.1    The VEBA will be established by a written document, to be included as an exhibit to the Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Proposed Notice.

2.1.2    Within two business days after the Effective Date, AK Steel will contribute by wire transfer to the VEBA an initial cash payment of four hundred sixty-eight million dollars ($468,000,000.00).

2.1.3   If the Judgment has not been appealed, then on the first anniversary of the Effective Date, AK Steel will contribute by wire transfer to the VEBA an additional cash payment of sixty-five million dollars ($65,000,000.00).

2.1.4   If the Judgment has not been appealed, then on the second anniversary of the Effective Date, AK Steel will contribute by wire transfer to the VEBA an additional cash payment of sixty-five million dollars ($65,000,000.00).

2.1.5   If the Judgment has not been appealed, then on the third anniversary of the Effective Date, AK Steel will contribute by wire transfer to the VEBA an additional cash payment of sixty-five million dollars ($65,000,000.00).

2.2   *Appeal of Judgment*

2.2.1   If there is an appeal of the Judgment by any member of the proposed Hourly Class or the proposed Salaried Class or by anyone else, then contributions to and payments from the VEBA will take place as described below.

2.2.2   If the initial contribution of $468,000,000.00 to the VEBA described in Section 2.1.2 has not already been made, the Company will proceed with such initial contribution.  The Company will not be obligated to make any further contributions to the VEBA, however, unless and until the Judgment is affirmed by order not subject to further appeal (which includes the final disposition of a petition for certiorari if one is filed).  In lieu of making any further contributions to the VEBA during the pendency of any appeals, AK Steel will place the contributions in an escrow account in the amounts and on the dates set forth in Sections 2.1.3 through 2.1.5.  The assets in the escrow account shall be invested according to the instructions of the VEBA's trustees, which instructions shall be consistent with the investment objectives for the assets of the VEBA.  Subject to the provisions of Sections 2.2.4 and 2.2.5, upon the final

disposition of all appeals, all assets in the escrow account, including principal and earnings (or losses), shall be paid immediately to and become the property of the VEBA. The Company will make any future required contributions after the Judgment is affirmed in accordance with Section 2.1.

  2.2.3 During the pendency of the appeal, the VEBA will continue to be responsible for all Post-Retirement Welfare Obligations with respect to members of both the proposed Hourly Class and the proposed Salaried Class and their eligible dependents. During this time, the Company shall have no liability with respect to, or obligation to pay for, Post-Retirement Welfare Benefits for any Class Members.

  2.2.4 If the Judgment is reversed, modified or vacated as a result of the appeal in such a way as to place the responsibility for maintaining Post-Retirement Benefits for all Class Members on AK Steel, then Plaintiffs agree that the monies in the escrow account referred to in Section 2.2.2 shall immediately revert to the Company. Further, the Company immediately shall be, and Plaintiffs shall be deemed to have immediately designated the Company as, the sole fiduciary controlling the VEBA and all the assets of the VEBA will immediately be subject to, and payable in connection with, one or more welfare benefit plans maintained and solely controlled by the Company. Under those circumstances, the Company will immediately assume prospective responsibility for payment of the Post-Retirement Welfare Benefits to the Class Members and it may use the assets then in the VEBA for that purpose, except that assets of the VEBA must be used to pay all expenses of the VEBA and all Class Member claims incurred and payable under the terms of the VEBA prior to the date the Company resumes responsibility for these benefits. The Company further, however, may use the assets in the VEBA to pay for or provide to any Contingent Beneficiary any benefits related to health care (including prescription

drugs, major medical, and other medical expense), health insurance premium reimbursements,

life insurance, dental insurance, vision insurance, or other non-pension payments or services. In

addition, the Parties shall resume the Litigation at that time as if no Settlement had been agreed

to. In such event, except with respect to the VEBA addressed in this Section 2.2.4, the terms and

provisions of the Settlement shall have no further force and effect with respect to the Parties and

shall not be used in this Litigation or in any other proceeding for any purpose. The Parties shall

submit any dispute as to the level of benefits paid during the period they were provided by the

VEBA to the Court.

      2.2.5   If an appellate decision places responsibility on AK Steel for any Health

and Welfare Benefits for some Class Members, then an appropriate pro-rata share of the monies

in the escrow account referred to in Section 2.2.2 shall immediately revert to the Company.

Also, a pro-rata share of the VEBA assets appropriate to fund that responsibility shall be placed

in a separate share (the "Share") in the trust, and the Plaintiffs agree that the Company

immediately shall be, and they shall be deemed to have immediately designated the Company as,

the sole fiduciary controlling that Share in the VEBA, and the assets of that Share will

immediately be subject to, and payable in connection with, one or more welfare benefit plans

maintained and solely controlled by the Company. Under those circumstances, the Company

will immediately assume prospective responsibility for payment of the portion of the

Post-Retirement Welfare Benefits as to which the Share has been established, and it may use the

assets then in the Share for that purpose except that assets of the VEBA attributable to the

Company's Share will be used to pay, with respect to the Class Members who are transferred to

the Share, the pro rata expenses of the VEBA and all of the Class Members' claims incurred and

payable under the terms of the VEBA prior to the date the Share was placed under the control of

the Company. (The assets transferred to the Share shall include the assets necessary to pay the claims and expenses described in the prior sentence.) The Company further, however, may use the assets in the Share to pay for or provide to any Contingent Beneficiary any benefits related to health care (including prescription drugs, major medical, and other medical expense), health insurance premium reimbursements, life insurance, dental insurance, vision insurance, or other non-pension payments or services. In addition, AK Steel may resume the Litigation at that time as if no Settlement had been agreed to solely with respect to the Class Members whose Health and Welfare Benefits have been found to be its responsibility. In such event, except with respect to the Share of the VEBA addressed in this Section 2.2.5, the terms and provisions of the Settlement shall have no further force and effect solely with respect to the continued dispute between AK Steel and those Class Members and shall not be used in this Litigation or in any other proceeding for any purpose.

If the Parties are unable to reach agreement, after consultation with each Party's actuary, as to the appropriate amount of the assets of the VEBA to be placed in the Share, then the Parties first will mediate their dispute with the Court. If the mediation does not resolve the dispute, then the Parties may file a civil action to enforce this provision of the Settlement to resolve the disagreement.

2.2.6 If an appellate decision upholds the transfer of the entire responsibility to the VEBA for the provision of Health and Welfare Benefits but requires some other act to be made by the Court, the Parties will consult as appropriate.

### 3. Operation of the VEBA

3.1 *Control of the VEBA*

3.1.1   The Class Representatives shall be responsible for the creation and establishment of the terms of the VEBA (subject, however, prior to the filing of the Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Proposed Notice, to the consent of AK Steel to such terms, which terms shall remain unchanged upon the Effective Date), for the timely and proper filing of the application for recognition of exemption under Internal Revenue Code Section 501(a) (Form 1024), for the timely and proper filing of the annual return for an organization exempt from tax (Form 1023), for the timely and proper filing of the annual return/report of employee benefit plan, and for any other return required to be filed by or with respect to the VEBA or the benefits provided thereunder.   The VEBA will be responsible for all costs of its administration, including but not limited to fees for lawyers, auditors, and other professionals.   The Class Representatives shall also be responsible for establishing a procedure for the selection and monitoring of the trustees of the VEBA.   The VEBA shall be made an exhibit to the Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Proposed Notice.

3.1.2   It is acknowledged that it is critical for information pertaining to health, welfare and pension benefits maintained by AK Steel or its service providers on behalf of Class Members and their eligible dependents be provided to the VEBA so that there is continuity between the benefits provided by the AK Steel and the benefits provided by the VEBA and so that the VEBA has sufficient information to prudently design a plan of benefits for Class Members and their eligible dependents.   It is agreed that AK Steel shall provide the VEBA with this information to the extent necessary for the VEBA to carry out these tasks and such information shall be kept in strict confidence by the VEBA, its Trustees and its service providers

and shall be used only to the extent necessary to operate the VEBA. The Court's approval of this Settlement Agreement shall constitute a Court order approving the exchange of this information.

3.1.3 Should AK Steel become the sole fiduciary controlling the VEBA in accordance with Section 2.2.4 above, the Company would then and thereafter be responsible for the selection and monitoring of the trustee(s) of the entire VEBA. Should AK Steel become the sole fiduciary controlling a Share of the VEBA in accordance with Section 2.2.5 above, the Company would then and thereafter be responsible for the selection and monitoring of the trustee(s) of such Share.

### 4. Release of AK Steel

4.1 *VEBA To Be Responsible For All Health And Welfare Benefits Incurred On And After Effective Date*

4.1.1 The VEBA shall be responsible for all Health and Welfare Benefits claims incurred on and after the Effective Date, except to the extent that the Judgment, if it is reversed or modified on appeal as described in Sections 2.2.4, 2.2.5, and 3.1.3, expressly provides otherwise.

4.1.2 AK Steel shall have no responsibility for any Health and Welfare Benefits claims incurred on and after the Effective Date, except to the extent that the Judgment, if it is reversed or modified on appeal as described in Sections 2.2.4, 2.2.5, and 3.1.3 expressly provides otherwise.

4.1.3 AK Steel shall be responsible for all Health and Welfare Benefits claims incurred prior to the Effective Date.

4.2 *Released Claims*

4.2.1 Upon the Effective Date, the Class Representatives and each of the Class Members shall have fully, finally and forever released, dismissed with prejudice, relinquished

and discharged all Released Claims. For any Class Member who appeals the Judgment, this Release will not become effective unless and until the Judgment is affirmed on appeal, and at that point the Release will be retroactive to the Effective Date. This Release does not release claims by Class Members to enforce the Judgment.

4.2.2 With respect to any and all Released Claims, the Class Representatives agree that upon the Effective Date, they and the Class Members (except for the proviso explained in Section 4.2.1) will be releasing all Released Claims arising from the beginning of time until the Effective Date of the Settlement, whether known or unknown, suspected or unsuspected, contingent or non-contingent. The Class Representatives acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for as a key element of the Settlement of which this release is a part.

**5.    Procedure for Court Approval**

5.1    *Procedure for Class Certification*

5.1.1 By October 10, 2007, Plaintiffs will move for class certification under Fed. R. Civ. P. 23(b)(2) for two classes--(1) the Hourly Class (as defined in Section 1.16 above) and (2) the Salaried Class (as defined in Section 1.32 above).

5.1.2 AK Steel will file a consent to these classes with the Court no later than October 15, 2007.

5.2    *Court Approval of Notice to the Class and a Settlement Hearing.*

The parties will endeavor in good faith to comply with the schedule set forth as indicated and as described more fully below.

| Date | Activity |
|------|----------|
| **1.** 10/23/07 | Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Proposed Notice and Plaintiffs' Renewed Motion for Class Certification |
| **2.** 11/2/07 or nine days after No. 1 | Hearing on Joint Motion and on the Renewed Motion for Class Certification |
| **3.** 11/9/07 or seven days after No. 2 | Notice Mailing Deadline |
| **4.** 12/24/07 or 45 days after No. 3 | Deadline for Filing of Objections |
| **5.** 1/28/08 or 35 days after No. 4 | Deadline for Parties to File Briefs Addressing Objections and to Move for Final Approval of Settlement |
| **6.** Week of February 11, 2008 | Settlement Hearing |
| **7.** March 1, 2008 | Targeted Effective Date |

5.2.1    Via the Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Proposed Notice, the Parties will request that the Court enter the Preliminary Approval Order scheduling the Settlement Hearing for the purposes of determining the fairness, reasonableness and adequacy of the Settlement, granting final approval of the Settlement, and entering Judgment.

5.2.2    Subject to Court availability, the Class Representatives and AK Steel shall endeavor to notice the Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Proposed Notice described in Section 5.2.1 and the Renewed Motion for Class Certification for a hearing before the Court on or about November 2, 2007. The Parties further shall request that the Court enter the Preliminary Approval Order granting such motion on or before November 19, 2007.

5.2.3   If the Court enters the Preliminary Approval Order after November 15, 2007, Class Counsel and counsel for AK Steel shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Settlement, if necessary.  In the event that counsel fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Settlement, provided that such a request to the Court may seek only reasonable modifications of the dates and deadlines contained in this Settlement and no other changes.

5.2.4   If the Court enters the Preliminary Approval Order, then at or before the resulting Settlement Hearing, the Class Representatives and AK Steel through their counsel shall endeavor in good faith to address any written objections from Class Members or any issues or concerns expressed by Class Members who testify at the Settlement Hearing.  They further shall endeavor in good faith to address any issues or concerns expressed by the Court during such Settlement Hearing.

5.3     *Notice to Class Members*

5.3.1   If, by entering the Preliminary Approval Order, the Court provides authorization to send a Class Notice to Class Members, AK Steel or its Notice Administrator will mail the Class Notice to all Class Members.  This Class Notice shall be mailed via first class mail through the United States Postal Service, postage pre-paid.

5.3.2   This Class Notice and its envelope or covering shall be marked to denote the return address of AK Steel or to a Notice Administrator.

5.3.3   AK Steel or the Notice Administrator shall prepare the name and Last Known Address for each Class Member so that it can engage in the processing and mailing of each Class Notice.  This information shall also be provided to Class Counsel who will have the

opportunity to review it for accuracy and to provide the Company with updated information to the extent Class Counsel is in possession of such information. The parties agree that by preliminarily approving this Settlement, the Court will have authorized this information transfer. Review by Class Counsel will not extend any deadline or any time period or notice period set forth in this Settlement. Class Counsel reserves the right to petition the Court to resolve any sufficiency of the Class Member information.

5.3.4 Unless the parties agree otherwise in writing or the Court so orders, each Class Notice shall be mailed to the Last Known Addresses of the Class Members no later than the Notice Mailing Deadline.

5.3.5 AK Steel shall be responsible for all costs of the mailing described in Section 5.3.1, which shall include the fees charged by the Notice Administrator (if any), the cost of the envelope in which the Class Notice will be mailed, the cost of reproducing the Class Notice and the cost of postage to send the Class Notice. The Class Representatives acknowledge that AK Steel's agreement to pay the notice administration and mailing costs constitutes additional consideration to the Class.

5.3.6 Unless AK Steel or the Notice Administrator receives a Class Notice returned from the United States Postal Service for reasons discussed below in this paragraph, that Class Notice shall be deemed received by the Class Member to whom it was sent three days after mailing. In the event that subsequent to the first mailing of a Class Notice Action and prior to the deadline for a response, that Class Notice is returned to AK Steel or the Notice Administrator by the United States Postal Service with a forwarding address for the recipient, AK Steel or the Notice Administrator shall re-mail the notice to that address, and the forwarding address shall be deemed the Updated Address for that Class Member. The Class Notice shall be deemed received

upon mailing once it is mailed for the second time. In the event that subsequent to the mailing of

any Class Notice, and at least fourteen (14) days prior to the Notice Response Deadline, a Notice

is returned to AK Steel or the Notice Administrator by the United States Postal Service because

the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender,"

and with no forwarding address, AK Steel or the Notice Administrator shall again undertake a

Reasonable Secondary Address Verification Measure (ie. a standard skip trace procedure) to

attempt to ascertain the current address of the particular Class Member in question and, if such

an address is ascertained, AK Steel or the Notice Administrator will re-send the Notice as

promptly as possible and in any event within fourteen (14) days of receiving such information.

In either event, the Notice regarding Settlement of the Class Action shall be deemed received

once it is mailed for the second time. In the event a Class Notice is returned as undeliverable,

AK Steel or the Notice Administrator will immediately notify Class Counsel of the name and the

last know address of the Class Member. To the extent Class Counsel ascertains another address

for the Class Member AK Steel or the Notice Claims Administrator will mail the Class Notice to

this address.

AK Steel or the Notice Administrator will advise the Court and the Parties of all returned

Class Notices as well as the action AK Steel or the Notice Administrator took on each such Class

Notice. Each Class Notice will include a change of address form to be used by a Class Member

who desires to update or change his or her mailing address by providing written notice to AK

Steel or the Notice Administrator.

5.4     *Responses to the Class Notice and the Motion for Final Approval*

5.4.1     Class Members have whatever rights are granted to them in accordance

with the Federal Rules of Civil Procedure to file written objections to the Settlement at their own

expense on or before the Notice Response Deadline (unless otherwise provided in the Preliminary Approval Order) and to appear at the Settlement Hearing. The Class Notice will advise Class Members of this option and that all objections must be filed in writing, any objections not filed in writing are of no effect, and that Class Members exercising this option shall be responsible for any attorneys' fees or costs incurred in connection with such objections.

5.4.2 Prior to the Settlement Hearing and consistent with the instructions of the Court, the Class Representatives and AK Steel shall jointly move the Court for entry of the Order of Final Approval (and the associated entry of Judgment). The Parties will do so within thirty-five (35) days after the Notice Response Deadline, and will endeavor in good faith to file such motion no later than January 28, 2008. Through this motion, the Parties shall advise the Court of the agreements in Section 5.6.1 of this Settlement. The Class Representatives and Class Counsel shall be responsible for justifying the agreed upon payments set forth in Section 5.6.1 of this Settlement. To the extent possible, the motion seeking entry of the Order of Final Approval shall be noticed for the same day as the Fairness Hearing, to be scheduled by the Court, which the Parties will use best efforts to be scheduled before February 15, 2008.

5.5 *Timing of Consideration to Settling Class Members and Notice of Final Approval to Class Members*

5.5.1 As soon as administratively possible following the Effective Date, AK Steel shall send, or cause to be sent through the Notice Administrator, a Notice of Final Approval to Class Members to each Class Member.

5.6 *Payment of Costs and Attorney Fees to The Class Representatives.*

5.6.1 Subject to Court approval, and effective if, and only if, the Judgment becomes final and not subject to further appeal (which includes the final disposition of a petition for certiorari if one is filed), AK Steel agrees to pay to Class Counsel three million dollars

($3,000,000.00) for all attorney fees and costs related to the Litigation and the subject matter of the Litigation, which all Parties agree is reasonable under the circumstances. The Class Representatives and Class Counsel, on behalf of themselves and all Class Members, if the Class is certified, agree that they shall not seek nor be entitled to any additional attorney fees or costs from AK Steel under any theory related in any way to the Litigation or the subject matter of the Litigation. The Class Representatives and Class Counsel agree that they shall be responsible for filing with the Court any pleadings or other submission necessary to obtain the approval of the Court for the payment of attorney's fees and costs. AK Steel agrees not to oppose any submission regarding or request for approval of this payment of fees or costs provided it does not exceed three million dollars ($3,000,000.00) and is otherwise consistent with this Settlement. In the event that the Court (or the appellate court) awards less than three million dollars ($3,000,000.00) for attorney fees and costs under this Settlement, only the awarded amounts shall be paid, and that payment shall constitute satisfaction of the obligations of this paragraph and full payment thereunder, and any remaining or unawarded portion of the maximum fee and cost awards shall remain the property of AK Steel. Payment of the attorney fees and costs approved by the Court shall not be due unless and until five business days after the Judgment becomes final and not subject to further appeal (which includes the final disposition of a petition for certiorari if one is filed). AK Steel shall make this payment pursuant to this paragraph to Class Counsel directly, and Class Counsel shall provide counsel for AK Steel with the pertinent taxpayer identification numbers and a Form W-9. Other than any reporting of this fee payment as required by this Settlement or law, which AK Steel shall make, Class Counsel and the Class Representatives shall alone be responsible for the reporting and payment of any federal, state or local income or other form of tax on any payment made pursuant to this paragraph. Payments

made pursuant to this paragraph shall constitute full satisfaction of any claim against the Company by any Class Member or Class Counsel for fees and costs related to the Litigation and the subject matter of the Litigation.

5.6.2   Plaintiffs shall be deemed the prevailing party in this Litigation solely for the purpose of and to the extent necessary to support an award of attorney's fees to Class Counsel.

5.6.3   Unless otherwise expressly provided, AK Steel shall have no responsibility for, and no liability whatsoever with respect to, the allocation among the Class Representatives, Class Counsel or any other person who may assert some claim thereto, of any award or payment issued or made in the Litigation or pursuant to this Settlement, including, but not limited to any award or payment pursuant to Section 5.6.1.

5.7     *Notice Administrator.*

5.7.1   AK Steel may act as Notice Administrator, or it may hire a Notice Administrator. The Company shall be responsible for the fees and expenses reasonably incurred by the Notice Administrator as a result of procedures and processes expressly required by this Settlement. The Class Representative and Class Counsel shall have no responsibility for any fees or expenses incurred by the Notice Administrator.

5.7.2   The actions of the Notice Administrator shall be governed by the terms of this Settlement. AK Steel may provide relevant information needed by the Notice Administrator per this Settlement, provide instructions to the Notice Administrator with regard to actions required by this Settlement, and engage in related communications with the Notice Administrator without notice or copies to Class Counsel, any Class Members, or the Court. However, communications with Class Members regarding notices and responses to notices will be shared

with Class Counsel, and AK Steel, Class Counsel, and the Notice Administrator shall cooperate in establishing a procedure for answering inquiries by Class Members.

      5.7.3   In the event that Class Representatives or Class Counsel take the position that the Notice Administrator is not acting in accordance with the terms of the Settlement, Class Counsel shall meet and confer with counsel for AK Steel prior to raising any such issue with the Notice Administrator or the Court.

### 6.      Class Action Fairness Act Provisions

      6.1    No more than ten days after filing the Motion for Preliminary Approval of Class Action Settlement Agreement and a copy of this Settlement Agreement with the Court, AK Steel will serve on the Attorney General of the United States, the Secretary of Labor of the United States, the Office of the Attorney General for each State in which a Class Member resides, and the state department of labor for each State in which a Class Member resides a copy of the following: (a) the complaint in the Litigation; (b) the motion for preliminary approval of the settlement, including the proposed date for the Fairness hearing; (c) the Settlement; and (d) a list of the Class Members by State of residence and the percentage share of the Class Members in each State.

      6.2    The Parties agree that the Settlement Hearing will not take place until 90 days after AK Steel has provided the notices contemplated by Section 6.1. The Parties further agree that it is their intent that AK Steel satisfy the government notice provisions of the Class Action Fairness Act of 2005; the Class Representatives and Class Counsel, on behalf of the Class, agree also that they will cooperate with AK Steel to make any changes in the terms or procedures set forth in this Settlement to facilitate such compliance.

6.3 Class Representatives and Class Counsel agree that these measures set forth in this Section 6 will satisfy the notice requirement of the Class Action Fairness Act of 2005 and 28 U.S.C. § 1715(b) in particular, and that no Class Member may seek to avoid the binding effect of the Judgment under the terms of the Class Action Fairness Act of 2005 and 28 U.S.C. § 1715(b), and by operation of the Judgment, all Class Members waive their rights to do so.

**7. Miscellaneous Provisions**

7.1 No Person shall have any claim against Class Counsel, the Class Representatives, the Notice Administrator, counsel for AK Steel, or any of the AK Steel Releasees based on the payments made or other actions taken in accordance with this Settlement or orders of the Court.

7.2 Notwithstanding any other provision of this Settlement, no order of the Court reducing, or modification or reversal on appeal of any order of the Court reducing, the amount of any attorney fees or costs to be paid by AK Steel to Class Counsel shall constitute grounds for cancellation or termination of the Settlement or grounds for limiting any other provision of the Judgment.

7.3 The Parties (a) acknowledge that it is their intent to consummate this Settlement, (b) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Settlement, and (c) agree to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement.

7.4 The Settlement compromises claims that are contested in good faith, and it shall not be deemed an admission by any of the Parties as to the merits of any claim or defense.

The Parties agree that the terms of the Settlement were negotiated in good faith by them, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.

7.5     Neither the Settlement, nor any act performed or document executed in furtherance of the Settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of any of the Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

7.6     The Settlement may be amended or modified only by a written instrument signed by or on behalf of AK Steel, Class Representatives and the Class Counsel, or their respective successors-in-interest.

7.7     The Settlement constitutes the entire agreement among the Parties hereto. No representations, warranties, or inducements have been made to any party concerning the Settlement other than the representations, warranties, and covenants contained and memorialized in this document.  Except as otherwise provided herein, each Party shall bear its own costs.

7.8     Class Counsel, on behalf of the proposed Classes, are expressly authorized by the Class Representatives to take all appropriate action required or permitted to be taken by the Class Representatives pursuant to the Settlement to effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement on behalf of the proposed Classes which they deem appropriate, subject to the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005.

7.9     Each counsel or other person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such counsel or other person has the full authority to do so.

7.10    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

7.11    The Settlement shall be binding upon and inure to the benefit of the successors and assigns of the Parties; but this Settlement is not designed to and does not create any third party beneficiaries except for the AK Steel Releasees, who are intended to be third party beneficiaries.

7.12    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

7.13    The Settlement shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Ohio, and the rights and obligations of the parties to the Settlement shall be construed and enforced in accordance with and governed by the substantive laws of the United States and the State of Ohio without giving effect to the State of Ohio's choice of law principles.

7.14    The language of all parts of this Settlement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either Party. No Party shall be deemed the drafter of this Settlement. The Parties acknowledge that the terms of the Settlement are contractual and are the product of negotiations between the Parties, by or with the

assistance of their counsel. Each Party through their counsel cooperated in the drafting and preparation of the Settlement. The Parties hereto have caused the Settlement to be executed.

Plaintiffs and Class Representatives

DATED: October 6, 2007

_____
Michael Bailey

X _____
Rudolph Pringle

X _____
Ronnie Banks

X _____
James Fetters

_____
Carl Reichenbach

X _____
Jesse Schultz

X _____
Scott Ratliff

_____
James McKinney

_____
Richard Tibbs

Defendant

AK STEEL CORPORATION


By: _____
James L. Wainscott, its Chairman,
President and Chief Executive
Officer


CLASS COUNSEL

COUNSEL FOR
AK STEEL CORPORATION


_____
Francis J. Martorana
Sally M. Tedrow
O'Donoghue & O'Donoghue LLP
4748 Wisconsin Ave., N.W.
Washington, D.C.  20016

_____
Gregory Parker Rogers
Justin D. Flamm
Daniel J. Hoying
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202


_____
David M. Cook
Cook, Portune & Logothetis
22 West Ninth Street
Cincinnati, Ohio  45202


{W1089884.3}

32

Defendant

AK STEEL CORPORATION

By: _____
James L. Wainscott, its Chairman,
President and Chief Executive
Officer

CLASS COUNSEL

COUNSEL FOR
AK STEEL CORPORATION

_____
Francis J. Martorana
Sally M. Tedrow
O'Donoghue & O'Donoghue LLP
4748 Wisconsin Ave., N.W.
Washington, D.C. 20016

_____
Gregory Parker Rogers
Justin D. Flamm
Daniel J. Hoying
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202

_____
David M. Cook
Cook, Portune & Logothetis
22 West Ninth Street
Cincinnati, Ohio 45202

Defendant

AK STEEL CORPORATION

By: _____
James L. Wainscott, its Chairman,
President and Chief Executive
Officer

CLASS COUNSEL

_____
Francis J. Martorana
Sally M. Tedrow
O'Donoghue & O'Donoghue LLP
4748 Wisconsin Ave., N.W.
Washington, D.C.  20016

COUNSEL FOR
AK STEEL CORPORATION

_____
Gregory Parker Rogers
Justin D. Flamm
Daniel J. Hoying
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202

_____
David M. Cook
Cook, Portune & Logothetis
22 West Ninth Street
Cincinnati, Ohio  45202