# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### CINCINNATI DIVISION

MICHAEL BAILEY, et al.,         :
on Behalf of Themselves and     :
Others Similarly Situated,       :
                                :
            Plaintiffs,    :    Case No:     06cv00468
                                :    Judge Michael R. Barrett
      v.                 :    Magistrate Timothy S. Black
                                :
AK STEEL CORPORATION,     :
                                :    **CLASS ACTION**
            Defendant.    :

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

Respectfully submitted,

By:    /s/ Sally M. Tedrow_____
       Sally M. Tedrow
       Francis J. Martorana
       Jennifer Simon
       **O'DONOGHUE & O'DONOGHUE LLP**
       4748 Wisconsin, Ave., N.W.
       Washington, D.C. 20016
       (202) 362-0041
       stedrow@odonoghuelaw.com
       fmartorana@odonoghuelaw.com
       jsimon@odonoghuelaw.com

By:    /s/ David M. Cook_____
       David M. Cook (Ohio Bar # 0023469)
       **COOK, PORTUNE & LOGOTHETIS**
       An Association of Law Corporations
       22 West Ninth Street
       Cincinnati, Ohio 45202
       (513) 721-7500
       dcook@dmcllc.com

Dated: November 29, 2007        **Attorneys for Plaintiffs**

## TABLE OF CONTENTS

I.    RULE 7.2(A)(3) SUMMARY OF MEMORANDUM ........................................................... 1

II.    STATEMENT OF FACTS .............................................................................................. 5

    A.   THE PARTIES' DISPUTE AND THE LITIGATION PRIOR TO SETTLEMENT DISCUSSIONS ......... 5

    B.   THE SETTLEMENT NEGOTIATIONS AND THE SETTLEMENT AGREEMENT ............................ 8

    C.   RETENTION OF CLASS COUNSEL AND FEES AND COSTS PAID AND INCURRED ................. 10

    D.   PAYMENT OF ATTORNEYS' FEES AND COSTS UNDER THE TERMS OF THE SETTLEMENT .... 11

    E.   SATISFACTION OF THE NOTICE REQUIREMENT OF RULE 23(H) ........................................ 12

III.    ARGUMENT .............................................................................................................. 13

    A.   THE COURT SHOULD GIVE GREAT WEIGHT TO THE PARTIES' AGREEMENT REGARDING
FEES AND EXPENSES AS PART OF THE SETTLEMENT AGREEMENT, ESPECIALLY SINCE THIS
AMOUNT WILL NOT BE DEDUCTED FROM THE VEBA ........................................................ 13

    B.   PLAINTIFFS' FEE REQUEST IS REASONABLE UNDER A "COMMON FUND" ANALYSIS ........ 15

        1.   *The Court Should Follow the Trend in The Sixth Circuit and Calculate Fees Using a
Percentage of the Fund Approach.* .......................................................................... 17

           a.   *Counsel secured substantial benefits for the Hourly Class during the litigation and
for both Classes as a result of the Settlement Agreement.* ................................. 18

           b.   *Society has a significant stake in rewarding attorneys who preserve retiree health
benefits.* ...................................................................................................... 19

           c.   *Class Counsel took the case on a significantly discounted fee basis* ........................ 20

           d.   *Class counsel have devoted substantial time to this case to date, and anticipate
significantly more time over the coming months or year*s. ................................. 22

           e.   *Complexity of Litigation.* ........................................................................... 25

           f.   *Skill of Counsel.* ...................................................................................... 25

        2.   *A Comparison of the Percentage of Recovery Between This Case and Similar Common
Fund Cases Shows Beyond Doubt That the Fee Request Is Reasonabl*e. ........................... 26

IV.    CONCLUSION ............................................................................................................ 28

## <u>TABLE OF AUTHORITIES</u>

### TABLE OF AUTHORITIES

### FEDERAL CASES

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ..................................................................................................15

*Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996) ...................................................................................22

*In re Broadwing, Inc. ERISA Litigation*,
  Case No. 1:02-cv-00857, 2006 U.S. Dist. LEXIS 72609 (S.D. Ohio, Oct. 5,
  2006) ................................................................................................................. passim

*Building Svcs. Loc. 47 Cleaning Contractors Pension Plan v. Grandview
  Raceway*,
  46 F.3d 1392 (6th Cir. 1995) ...................................................................................22

*In re: Cardizem CD Antitrust Litigation*,
  218 F.R.D. 508 (E.D. Mich. 2003) ................................................................. passim

*In re Cendant Corp. Prides Litig.*,
  243 F.3d 722 (3rd Cir. 2001) ..............................................................................5, 26

*Central Railroad and Banking Co. v. Pettus*,
  113 U.S. 116 (1885) .............................................................................................5, 21

*Clevenger v. Dillards, Inc. Mercantile Stores Pension Plan*,
  Case No. C-1-02-558, 2007 U.S. Dist. LEXIS 17464 (S.D. Ohio March 9,
  2007) ................................................................................................................. passim

*DeHoyos v. Allstate Corporation*,
  240 F.R.D. 269, 2007 U.S. Dist. LEXIS 12366 (W.D. Tex. February 21,
  2007) ................................................................................................................. passim

*Forbrush v. J.C. Penney Co.*,
  98 F.3d 817 (5th Cir. 1996) .....................................................................................24

*Fournier v. Pfs. Invs.*,
  997 F. Supp. 828 (E.D. Mich. 1998) ........................................................................18

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3rd Cir. 1995) ...............................................................................16, 22

*In re Global Crossing Securities and ERISA Litigation*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................16

*Hensley v. Eckerhard*,
    461 U.S. 424 (1983)..................................................................................18

*Lobatz v. U.S. West Cellular*,
    222 F.3d 1142 (9th Cir. 2000) ......................................................... passim

*Local 56, United Food & Commercial Workers Union v. Campbell Soup*,
    954 F. Supp. 1000 (D.N.J. 1997) ..................................................... passim

*Malchman v. Davis*,
    761 F.2d 893 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986) ..............14

*Manners v. American General Life Insurance Company*,
    Civ. Action No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880 (M.D. Tenn., Aug.
    11, 1999) ............................................................................................ passim

*In re Marion Merrell Dow, Inc. Sec. Litig.*,
    965 F. Supp. 25 (W.D. Mo. 1997) ..............................................................15

*McBean v. City of New York*,
    233 F.R.D. 377 (S.D.N.Y. 2006) ...................................................... passim

*New England Health Care Employees Pension Fund v. Fruit of the Loom*,
    234 F.R.D. 627 (W.D. Ky. 2006).........................................................17, 18

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974) ......................................................... passim

*Rawlings v. Prudential-Bache Properties, Inc.*,
    9 F.3d 513 (6th Cir. 1993) ..................................................................4, 17

*Schalk v. Teledyne*,
    751 F. Supp. 1261 (W.D. Mich. 1990) ......................................................20

*Schultz v. Teledyne*,
    657 F. Supp. 293 (W.D. Pa. 1987)..............................................................20

*In re Sprint Corporation ERISA Litig*,
    443 F.3d 12 (10th Cir. 2006) .....................................................................26

*In re Sulzer Prosthesis Liability Litigation*,
    268 F. Supp. 2d 907 (S.D. Ohio 2003) .................................................21, 23

*Varacello v. Mass Mutual Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005)..............................................................................passim

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..........................................................................passim

*Wing v. Asarco Inc.*,
    114 F.3d 986 (9th Cir. 1997) ..................................................................................23

## STATE CASES

*Lealao v. Beneficial California, Inc.*,
    82 Cal. App. 4th 19, 79 Cal. Reptr. 2d 797 (2000).....................................................15

## FEDERAL STATUTES

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001
    *et seq.* ...............................................................................................................passim

Fed R. Civ. P. 23(h) ...............................................................................................passim

Fed. R. Civ. P. 54(d)(2).................................................................................................12

Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 .......................................6

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Plaintiffs Michael Bailey, Rudolph Pringle, Carl Reichenbach, James Fetters, Scott Ratliff, Ronnie Banks, Jesse Schultz, Richard Tibbs and James McKinney ("Plaintiffs") and their counsel hereby petition the Court for approval of attorneys' fees and expenses in the amount of three million dollars pursuant to Fed.Civ. P. 23(h) and 54(d). This is the amount that Defendant AK Steel Corporation ("AK Steel") has agreed to pay as part of the Settlement Agreement in this action. That agreement concerning costs and fees is subject to Court approval, which Plaintiffs now seek in this motion.

## I. RULE 7.2(a)(3) SUMMARY OF MEMORANDUM

In the Statement of Facts, Plaintiffs first summarize the dispute and resulting litigation between the nine named Plaintiffs, acting on behalf of two retiree classes, and Defendant AK Steel Corporation. The fundamental questions in dispute are whether AK Steel is obligated to provide lifetime retiree health benefits to Plaintiffs and the members of the two classes, and whether such an obligation was breached when AK Steel announced its intention to reduce existing benefit levels effective October 1, 2006. On September 22, 2006, the Court granted a Preliminary Injunction preventing AK Steel from implementing planned reductions in the health benefit plan covering the hourly retiree class. The parties then continued to actively litigate the case, including an appeal of the Preliminary Injunction, over a one year period prior to the commencement of Court-monitored settlement discussions. (Section II(A), pp. 5-8.)

Section II(B) of the Statement of Facts sets forth the general parameters and circumstances of the parties' settlement discussions, which commenced in the summer of 2007 and concluded on September 21, 2007. Having obtained pertinent actuarial information from the

1

company which was reviewed and analyzed by an expert health consultant and actuary retained to assist them and their counsel, Plaintiffs engaged in arms length negotiations with AK Steel under the supervision of the Court. The negotiations resulted in a Settlement Agreement pursuant to which the company is to pay a total of $663,000,000 into a Voluntary Employees' Beneficiary Association ("VEBA") which will provide retiree health benefits to class members and will be administered by a board of trustees totally independent of the company. The Plaintiffs' actuaries have designed and proposed a plan of benefits which is intended to provide coverage for the lifetimes of class members. While there will be cost sharing, the plan is substantially better than the plan which AK Steel would have put into place for the hourly retirees absent the Preliminary Injunction. The severing of financial ties with the company means that the VEBA's ability to continue benefits will not affected by any future financial problems the company may experience. (Section II(B), pp. 8-10.)

Section II(C) of the Statement of Facts summarizes the terms under which class counsel undertook to represent the class members' interests in this litigation. The two law firms have received payments toward their work and costs at a discounted flat billing rate, with the understanding that the parties making those payments would be reimbursed in full from any fee/cost award in the case. Any fee award will go first to repay the Union for its ongoing financial support of the litigation and to reimburse a modest amount received from a Defense Fund created by class members to assist in the continuation of the lawsuit. (Section II(C), pp. 10-11.)

In Section II(D), Plaintiffs describe the parties' agreement concerning attorney's fees and costs. Subject to Court approval, AK Steel has agreed to pay $3,000,000 to class counsel for costs and fees, an amount the parties have agreed is reasonable. The payment is separate and

apart from the monies to be contributed to the VEBA, represents less than one half of one percent of the cash value of the settlement, and will cover not only work already performed but also future work in connection with obtaining final approval of the Settlement Agreement and addressing any appeals from a final order of the Court.  (Section II(D), pp. 11-12.)  The remainder of the Statement of Facts explains Plaintiffs' satisfaction of the notice requirements of Fed. R. Civ. P. 23(h).  (Section II(E), pp. 12-13.)

In the Argument portion of the memorandum, Plaintiffs first explain that they are petitioning for fees under Rule 23(h), which authorizes an award of fees and costs that results from an agreement of the parties.  Under the rule, the Court must determine if the fee award is reasonable.  Courts favor negotiated fee awards in class actions as an "ideal" toward which the parties should strive.  *See, e.g., Manners v. American General Life Insurance Company,* Civ. Action No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, *84-85 (M.D. Tenn., Aug. 11, 1999) and other authority cited *infra.*  This is particularly so where, as here, the fee award is in addition to and separate from the financial benefit to the class. S*ee, e.g., DeHoyos v. Allstate Corporation,* 240 F.R.D. 269, ___, 2007 U.S. Dist. LEXIS 12366, *171-175 (W.D. Tex. February 21, 2007) and authorities cited therein.  Any reduction in an agreed upon fee award would inure to the benefit of the Defendant, which has agreed to pay the fees, and not to the class.  *Id.*  at __, 2007 U.S. Dist. LEXIS at *174.  The fact that this fee agreement was negotiated at arms' length by experienced counsel under the supervision of the Court weighs strongly in favor of approval of the fee.  *McBean v. City of New York,* 233 F.R.D. 377, 392 (S.D.N.Y. 2006).  (Section III(A), pp. 13-15.)

Plaintiffs' fee request may readily be deemed reasonable under a common fund analysis, which is the approach most appropriate for and analogous to this case.  A common fund will be

created for the benefit of all class members, in the form of the VEBA funded by the company's $663,000,000 payments. The only distinction between this case and a traditional common fund fee application is that in this instance the fee award will not come out of or diminish the common fund amount; the VEBA payments will remain intact and be retained exclusively for the use of class members. Courts have found that in these circumstances, it is appropriate to apply a common fund analysis. *See, e.g., Varacello v. Mass Mutual Life Ins. Co.,* 226 F.R.D. 207, 248-49, 249 (D.N.J. 2005). (Section III(B), pp. 15-17.)

Use of a percentage-of-recovery method is appropriate in common fund fee applications. *See, e.g., Rawlings v. Prudential-Bache Properties, Inc.,* 9 F.3d 513, 516-17 (6th Cir. 1993). Under this approach, the Court is to consider 1) the value of the benefit rendered to the class, 2) society's stake in maintaining incentives to attorneys to undertake such cases, 3) whether the services were undertaken on a contingent basis, 4) the value of the services, 5) the complexity of the case, and 6) the professional skill and standing of counsel. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974). (Section III(B)(1), pp. 17-18.) Here, counsel secured a substantial benefit for the class by negotiating an arrangement which will provide a secure and continuing plan of benefits at a relatively low cost which is expected to last for the lifetimes of class members. Moreover, counsel obtained a Preliminary Injunction which preserved intact a valuable plan of benefits for the hourly retiree group for the duration of the litigation. (Section III(B)(1)(a), pp. 18-19.) The societal interest in protecting retiree health benefits has been recognized in several cases. (Section III(B)(1)(b), pp. 19-20.) Class counsel took this case on a significantly discounted basis, an arrangement considered to favor a fee award under the third *Ramey* factor. *See, e.g., In re Broadwing, Inc. ERISA Litigation,* Case No. 1:02-cv-00857, 2006 U.S. Dist. LEXIS 72609, *40 (S.D. Ohio, Oct. 5, 2006). The case law has long recognized that

4

an ongoing compensation arrangement does not undermine a fee application based on a percentage-of-recovery analysis. *See, e.g., Central Railroad and Banking Co. v. Pettus,* 113 U.S. 116 (1885). (Section III(B)(1)(c), pp. 20-22.) Reviewed by comparison to a lodestar analysis, the fee award agreed to herein appropriately reflects the value of the services provided. (Section III(B)(1)(d), pp. 22-25.) The litigation involved multiple procedural and statutory issues, notably under ERISA, a statute the Courts have recognized as constituting a complex and highly specialized area of the law. *See, e.g., In re Broadwing,* 2006 U.S. Dist. LEXIS 72609, *40. (Section III(B)(1)(e), p. 25.) Finally, the skill of class counsel is readily demonstrated in the attached declarations and in the result achieved in this settlement. (Section III(B)(1)(f), pp. 25-26.)

A comparison of the percentage of recovery in this case (less than one half of one percent) compares most favorably to percentage awards in other cases. The final section of Plaintiffs' Argument cites such cases, and reviews of such cases, which involve percentage awards ranging from 2.8 % to 36% and even higher, with the majority of cases seeming to fall above 10%. *See, e.g., In re Cendant Corp. Prides Litig.,* 243 F.3d 722, 736-37 (3rd Cir. 2001). (Section III(B)(2), pp. 26-27.)

## II.  STATEMENT OF FACTS

### A.  The Parties' Dispute And The Litigation Prior To Settlement Discussions

AK Steel has long provided health benefits to its retirees and dependents who worked for AK Steel or a predecessor under collective bargaining agreements ("CBAs") negotiated with the Armco Employees Independent Federation ("AEIF"). (Declaration of Jennifer R. Simon In Support of Plaintiffs' Motion for Preliminary Injunction Exs. 2 ¶¶ 14-15; 7.)[1] On June 1, 2006, AK Steel announced it was unilaterally terminating its existing retiree benefit plan effective

---

[1] Docket Entry # 11.

October 1, 2006, and replacing it with a new, markedly inferior program of benefits. (*Id.* Ex. 7.) As of October 1, 2006 AK Steel planned to terminate all dental/vision benefits and Medicare Part B premium supplements, to increase deductibles and co-pays, and to impose premiums for medical insurance. (*Id.*) Further, premiums were to increase each year thereafter, and commencing in 2009 all future increases in the cost of providing the benefits would be borne by the retirees. (*Id.*)

Shortly thereafter, on June 6, 2006, AK Steel filed an action in the Southern District of Ohio, Dayton Division, against AEIF and its officers, seeking a declaratory judgment that it had the right to modify or terminate all insurance benefits of its AEIF retirees at any time and for any reason. (*Id.* Ex. 1.) On July 18, 2006 Plaintiffs filed the instant class action lawsuit under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, alleging that AK Steel was obligated under the CBAs and related retiree health plans to maintain retiree health benefits for life and asking the Court to enjoin AK Steel from violating those obligations. (Complaint[2] Count I, Count II and Prayer for Relief). The Plaintiffs sought declaratory and injunctive relief and damages on behalf of two classes consisting of approximately 4800[3] hourly retirees/surviving spouses and approximately 120 salaried auxiliary retirees/surviving spouses, both of which were covered by AEIF-negotiated contracts. (*Id.* ¶¶ 2, 22.) After considerable procedural wrangling in the Dayton and Cincinnati courts, the company voluntarily dismissed its Dayton case on August 22, 2006. (Declaration of Sally M. Tedrow ("Tedrow Decl.") attached as Exhibit 1, ¶ 8.)

---

[2] Docket Entry # 1.
[3] Plaintiffs initially estimated about 4300 hourly retirees would be affected by AK Steel's actions. During the course of the litigation Plaintiffs obtained additional information establishing the hourly class at approximately 4800 retirees and surviving spouses.

On August 4, 2006, Plaintiffs moved for a Preliminary Injunction in this Court on behalf of the hourly retiree class. (Plaintiffs' Motion for Prelim. Inj. [4]). On September 22, 2006, eight days before the benefit reductions were scheduled to take place, the Court granted in full Plaintiffs' Motion For a Preliminary Injunction, finding that Plaintiffs had demonstrated a likelihood that they would succeed on the merits of their claim that they had a vested entitlement to retiree health benefits. (9/22/06 Preliminary Injunction and 9/25/06 Amended Preliminary Injunction.[5]) AK Steel immediately appealed the Preliminary Injunction to the Sixth Circuit. (Declaration of Francis J. Martorana ("Martorana Decl.") attached as Exhibit 2, ¶ 6.) The injunction is still in place; as a result, all hourly retirees, surviving spouses and dependents continue to receive medical and prescription drug benefits, along with dental and vision benefits, at no cost, pending the resolution of this litigation. (Martorana Decl ¶ 7.) However, AK Steel did reduce the benefits of the salaried auxiliary class effective October 1, 2006. (Declarations of James McKinney and Richard Tibbs in Support of Plaintiffs' Renewed Motion for Class Certification ¶ 6.)[6]

Throughout late 2006 and continuing into the summer of 2007 the parties continued to vigorously litigate the case. The Plaintiffs took and submitted to extensive discovery, including multiple depositions of each side and the review of thousands of pages of documents, and fully briefed and argued AK Steel's appeal of the preliminary injunction in the Sixth Circuit. (Martorana Decl. ¶ 6.) In February 2007, Plaintiffs also filed a motion for class certification and appointment of class counsel, and the parties fully briefed that motion.[7] Plaintiffs requested certification of two classes identical to those described in the Complaint and requested that Sally

---

[4] Docket Entry # 11.
[5] Docket Entries # 28, 34.
[6] Docket Entry # 50.
[7] Docket Entries # 40, 42, 43.

M. Tedrow, Francis J. Martorana and Jennifer R. Simon of O'Donoghue & O'Donoghue LLP and David M. Cook of Cook, Portune & Logothetis be appointed class counsel. (2/14/07 Motion for Class Certification.)

B.      **The Settlement Negotiations And The Settlement Agreement**

In accordance with the wishes of the Court, the parties agreed to engage in settlement discussions in the summer of 2007, and an initial mediation was scheduled with the Court on July 25, 2007. (Motion for Preliminary Approval of Settlement Agreement; Attachment 2: Settlement Agreement p. 4.)[8] As a result of these discussions, the company agreed to provide detailed actuarial data to Plaintiffs to assist them in evaluating and formulating settlement proposals. (*Id.*) In addition, actuaries from a nationally known consulting firm were retained to assist Plaintiffs in reviewing company data and analyzing settlement proposals. (Martorana Decl. ¶ 8; *see also* Declaration of David M. Cook ("Cook Decl.") attached as Exhibit 3, ¶ 7.) On September 21, 2007, a second Court-sponsored mediation session was held at which the parties reached agreement on the terms of a settlement. (*Id.*) The parties then filed a joint Motion for Preliminary Approval of the Settlement and Proposed Class Notice, along with a Renewed Motion to Certify the Classes and Appoint Class Counsel, adjusted to reflect certain intervening events and additional facts learned after the lawsuit was filed and to simplify the class definitions.[9] On November 1, 2007, Court granted the Renewed Motion to Certify the Classes and Appoint Class Counsel, and on November 2, 2007 the Court granted the parties' joint Motion for Preliminary Approval of the Settlement.[10] On or about November 9, 2007, AK Steel mailed Notice of the Proposed Settlement Agreement, along with several attachments, to all members of both the Hourly and Salaried Classes.

---

[8] Docket Entry # 51.
[9] Docket Entries # 50, 51.
[10] Docket Entries # 55, 58.

The Settlement Agreement provides for the creation and funding of a Voluntary Employees Beneficiary Association ("VEBA"), a trust which Plaintiffs anticipate will provide health and welfare benefits to members of the hourly and the salaried classes for the remainder of their lives. The Settlement Agreement provides that AK Steel will make an initial payment of $468,000,000 to the VEBA immediately following Court approval of the Settlement Agreement, and will contribute an additional $65,000,000 each year for an additional three years thereafter for a total of $663,000,000. (Settlement Agreement 2.1.) Plaintiffs bear responsibility for the creation, establishment, operation and administration of the VEBA, and the company will have no involvement in the VEBA other than to make the aforementioned contributions. (*Id.* 3.1.)

Professional actuaries have calculated that benefits provided by the VEBA can be significantly better than those announced by AK Steel in June 2006 and implemented for the salaried group in October 2006. First, the actuaries anticipate the VEBA will subsidize *all* participants on average 90% of the cost of the plan for their lifetimes, whereas AK Steel's October 1, 2006 plan initially subsidized pre-Medicare retirees 90% and Medicare-age retirees only 50%, and subsequently shifted all increases in the cost of providing benefits to the retirees commencing in 2009. (Notice of Proposed Settlement 11 - 12.) Second, AK Steel's October 1, 2006 plan terminated reimbursement payments for Medicare Part B premiums, which currently cost $93.50 per month for each Medicare-eligible participant and which generally increase every year. (*Id.*) By contrast, the VEBA will pay the entire Medicare Part B premium reimbursement for retirees and eligible spouses. (*Id.*) Finally, and perhaps most important, AK Steel's October 1, 2006 plan provided no security whatsoever to retirees: it expressly reserved the right to terminate all benefits to its retirees at any time. (Simon Decl. Ex. 1C.) In contrast, the Settlement Agreement was reached only after professional actuaries concluded that the VEBA,

9

funded entirely by AK Steel, would in all likelihood be able to provide class members with a level of benefits greater than that which AK Steel sought to implement, and at a fixed percentage of actual costs to the class for the remainder of all class members' lives. (Notice of Proposed Settlement 11-12.)

Moreover, the Settlement Agreement eliminates the risk to the retirees that the company could subsequently fall on hard times, declare bankruptcy and be relieved of its retiree health care obligations, leaving the retirees with drastically reduced benefits or no benefits at all. In short, the Settlement Agreement enables the class members to continue to receive comprehensive retiree health care benefits at a relatively low cost and with security for the future.

### C.     Retention Of Class Counsel And Fees And Costs Paid And Incurred

Following AK Steel's announcement that the company would be substantially reducing retiree benefits and might change or eliminate them in the future, the firms of O'Donoghue & O'Donoghue LLP and Cook, Portune & Logothetis were retained to represent the retirees in a class action lawsuit against AK Steel. The O'Donoghue and Cook firms were also asked to represent the AEIF and its Executive Board members in the declaratory judgment action filed by AK Steel in the federal district court in Dayton, because that case involved the same underlying dispute: whether or not the company was obligated to maintain the existing plan of retiree health benefits for life. (Tedrow Decl. ¶ 8.) Because of the limited means of both the retirees and the AEIF, the two firms agreed to undertake these representations at deeply discounted billing rates and under the conditions described below.

During the course of all of this litigation, undersigned counsel, as well as other attorneys and law clerks at the O'Donoghue and Cook law firms, worked under fee arrangements pursuant

to which the Plaintiffs paid no fees or litigation costs.[11]  (Tedrow Decl. ¶ 10.)  Pursuant to an arrangement reached with Plaintiffs, the AEIF and the law firms, the AEIF (and its successor, Local Lodge 1943 of the International Association of Machinists and Aerospace Workers) (hereinafter collectively referred to as the "Union") have reimbursed the firms on a monthly basis for work performed in the litigation at the deeply discounted rate of $180 per hour for *all* attorney time – no matter how experienced the attorney – plus costs incurred.  (*Id.* ¶ 9.) Plaintiffs, the law firms and the Union also have an understanding that Plaintiffs would ultimately seek an award of costs and attorneys' fees and that – in the event of such an award – amounts received would go first to reimburse the Union, and the retiree defense fund referred to in footnote below, for costs and fees paid to the two firms.  (*Id.* ¶¶ 10-11.)

### D.    Payment of Attorneys' Fees and Costs Under the Terms of the Settlement

In settling the litigation, AK Steel agreed to pay $3,000,000 to class counsel for costs and fees related to the litigation or its subject matter, subject to the approval of the Court. (Settlement Agreement 5.6.)  The parties specifically agreed that this amount is "reasonable under the circumstances."  (*Id.*)  This amount will be paid over and above the consideration provided to the Classes as part of the settlement – it does not come out of the VEBA and thus will not diminish in any way the benefits to which class members are entitled under the settlement. (*Id.*; *see also* Martorana Decl. ¶ 8; Cook Decl. ¶ 8).  The requested fees and expenses represent less than one half of one percent of the cash value of the settlement: 0.45% of the company's contribution of $663 million into the VEBA.

---

[11] At some point during the litigation the Class Representatives and certain other class members raised some modest funds for legal fees and costs.  These amounts were placed into a Defense Fund the purpose of which was to assist in funding the litigation.  To date, a modest amount of fees and expenses have been paid out of the Defense Fund at the discounted rate, for a total of about $30,000.  (*Id.* ¶ 10.)  The remainder has been paid by the Union.  (*Id.*)

The parties also agreed that Class Counsel and the class members would not seek any additional fees or costs from AK Steel related to this litigation.  (Settlement Agreement 5.6.) Thus, Class Counsel's fees are capped at $3 million regardless of the substantial amount of work counsel will continue to perform in the coming months and perhaps longer: ensuring approval of the settlement, handling any objections, interventions and/or appeals, and establishing the VEBA.  (Martorana Decl. ¶ 8.)  Indeed, the Agreement expressly provides that AK Steel will pay *no* attorney fees or expenses until all appeals have been exhausted and the judgment is final. (Settlement Agreement 5.6.1.).

### E.  Satisfaction Of The Notice Requirement Of Rule 23(h)

Fed. R. Civ. P. 23(h) provides that a motion for fees or other costs in class actions 1) should be made pursuant to Fed. R. Civ. P. 54(d)(2); 2) that "[n]otice of the motion must be served on all parties, and, for motions by class counsel, *directed to class members in a reasonable manner*," and 3) that "[a] class member, or a party from whom payment is sought, may object to the motion.  In order to insure that notice of the fee application would be directed to class members "in a reasonable manner" and that they would have an opportunity to object, the following statement was included in the Court-approved notice sent to class members on November 9, 2007:

### ATTORNEYS' FEES AND COSTS

Under the terms of the Settlement Agreement, AK Steel has agreed to pay Class Counsel a sum of money for attorneys' work and costs incurred in the litigation and resolution of this dispute.  This amount will be paid by AK Steel and will not come from the assets of the VEBA, nor does it reduce the amount of money payable to the VEBA. The payment to class counsel for costs and fees will be $3,000,000, subject to Court approval.  Plaintiffs' application and brief supporting the amount of the agreed upon attorneys' fee award will be filed with the Court within twenty days of your receipt of this Notice.  Once filed, these documents will be available for review at the Office of the Clerk of the Court.  Any Class Member's objections may address the proposed fee award, as well as any other part of the proposed Settlement Agreement.

By including this paragraph in the notice to class members, Plaintiffs have satisfied the notice requirement of Rule 23(h).

### III.    ARGUMENT

**A.    The Court Should Give Great Weight To The Parties' Agreement Regarding Fees And Expenses As Part Of The Settlement Agreement, Especially Since This Amount Will *Not* Be Deducted From The VEBA**

This motion is brought under Fed. R. Civ. P. 23(h), which expressly authorizes the Court to award "reasonable attorney fees and nontaxable costs…by agreement of the parties…." Because Plaintiffs have, and will, satisfy the procedural requirements of Rule 23(h), and because Plaintiffs are petitioning for approval of a payment expressly agreed to by the parties, the question before the Court is whether the amount of the award is reasonable within the meaning of Rule 23(h).  AK Steel, in executing the Settlement Agreement, has expressly recognized the amount of the award as reasonable (Settlement Agreement 5.6), and – as we show below – the award is reasonable when gauged by traditional measures.

Negotiated, agreed upon attorneys' fees as part of class action settlements are encouraged as an "ideal" toward which the parties should strive.  *See, e.g., Manners v. American General Life Insurance Company,* Civ. Action No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, *84-85 (M.D. Tenn., Aug. 11, 1999) (internal citations omitted); *see also DeHoyos v. Allstate Corporation,* 240 F.R.D. 269, ___, 2007 U.S. Dist. LEXIS 12366, *171-175 (W.D. Tex. February 21, 2007) (collecting cases).  As the Second Circuit has held:

> Where…the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems [] that an agreement 'not to oppose' an application for fees up to a point is essential to the completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.  It is difficult to see how this could be left entirely to the court for determination after the settlement.

*Malchman v. Davis,* 761 F.2d 893, 905 n.5 (2d Cir. 1985), *cert. denied*, 475 U.S. 1143 (1986). Indeed, the Court in this case has not left the issue of fees entirely for 'determination after the settlement' – it has preliminarily approved the parties' negotiated fee agreement as part of its preliminary approval of the Settlement Agreement as a whole.

Courts are even more apt to award negotiated attorneys' fees and expenses in the amount requested where that amount is in addition to and separate from the defendant's settlement with the class. *See, e.g., Lobatz v. U.S. West Cellular,* 222 F.3d 1142, 1149-50 (9th Cir. 2000) (affirming lower court's award of entire requested amount of fees and expenses totaling $1.3 million where defendant had agreed to pay up to that amount, maximum, and where fees and expenses were paid separately from the class settlement); *DeHoyos,* 240 F.R.D. 269, ___; 2007 U.S. Dist. LEXIS 12366, *17-19, *245; (awarding entire requested amount of fees and expenses totaling over $11.7 million where parties agreed to fee amount and fees are separate and apart from the class settlement and will not in any way diminish it); *Varacello v. Mass Mutual Life Ins. Co.,* 226 F.R.D. 207, 248-49, 259 (D.N.J. 2005) (same situation – court awarded entire requested amount of fees and expenses of $58.2 million); *Manners v. Am. Gen. Life Ins. Co.,* 1999 U.S. Dist. LEXIS 22880, *83-84, *95 (same – court awarded entire requested fee and expense amount of $19.5 million); *Local 56, United Food & Commercial Workers Union v. Campbell Soup,* 954 F. Supp. 1000, 1005 (D.N.J. 1997) (same – court granted Class Counsel $3.5 million, the maximum amount agreed to by the parties.)  As the *DeHoyos* court noted, fees negotiated and paid separate and apart from the class recovery are entitled to a "presumption of reasonableness." 240 F.R.D. 269, ___, 2007 U.S. Dist. LEXIS 12366, *174; *see also McBean v. City of N.Y.,* 233 F.R.D. 377, 392 (court need not review and application for attorneys' fees with heightened level

of scrutiny where parties have contracted for an award of fees which will not be paid from common fund); *Lobatz,* 222 F.3d at 1148-1149 (same).

It should not go unnoticed that any reduction in fees would inure solely to the benefit of AK Steel and not to the benefit of the class members. *See DeHoyos,* 240 F.R.D. at ___, 2007 U.S. Dist. LEXIS 12366, *174.

In this case, the parties have negotiated an amount of fees and expenses which both Plaintiffs and Defendant agree is reasonable. The negotiation took place at arms' length between sophisticated counsel on both sides of the table and under the Court's supervision. (Martorana Decl. ¶ 8; Cook Decl. ¶ 8.) These factors "weigh strongly in favor of approval" of the fee petition. *McBean v. City of New York,* 233 F.R.D. 377, 392 (S.D.N.Y. 2006). AK Steel has agreed to pay Class Counsel's fees and expenses over and above the settlement benefits with no reduction of class benefits. Finally, as discussed further *infra,* the negotiated fee and expense amount represents a far lower percentage than is typically awarded in class action settlements: less than one half of one percent of the value of the VEBA. For these reasons, Plaintiffs urge the Court to give great weight to the negotiated fee in considering the fee and expense request.

> **B.**    **Plaintiffs' Fee Request Is Reasonable Under A "Common Fund" Analysis**

The Supreme Court "has consistently recognized that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) (internal citations omitted). This, of course, is what the settlement does in this case: it creates a $663,000,000 fund for the sole purpose of providing health benefits to thousands of participants, only nine of whom are Counsel's clients.[12] The common fund doctrine has been applied in a

---

[12] The fact that class members in this case may receive health benefits in the future rather than a present cash recovery does not affect the common fund analysis. *See, e.g., Lealao v. Beneficial California, Inc.,* 82 Cal. App. 4th

variety of contexts, including actions brought under ERISA.  *See, e.g., Clevenger v. Dillards, Inc.,* Case. No. 1-02-558, 2007 U.S. Dist. LEXIS 17464, *6-7 (S.D. Ohio, March 9, 2007) (collecting cases); *In re Global Crossing Securities and ERISA Litigation,* 225 F.R.D. 436, 469 (S.D.N.Y. 2004) (also collecting cases).

This Settlement does not provide for attorneys' fees to be taken from the common fund, thus it is not strictly speaking a common fund case.  However, Courts in a number of circuits, including this circuit, have found such settlements analogous to common fund cases "in that the fees and Class award would be paid by the Defendant[] and a common fund has been established for the class."  *Varacello v. Mass Mutual Life Ins. Co.,* 226 F.R.D. at 249; *see also Lobatz v. U.S. West Cellular of Cal., Inc.,* 222 F.3d at 1146-47; *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 819-20 (3rd Cir. 1995); *Manners v. Amer. Gen. Life Ins. Co.,* 1999 U.S. Dist. LEXIS at *85-86; *Local 56 UFCW v. Campbell Soup,* 954 F. Supp. at 1003.

In addition to the $663,000,000 common fund that will be placed in the VEBA, the Court may take note that – in obtaining the Preliminary Injunction – Plaintiffs and class counsel secured an additional, valuable common benefit for all hourly class members, represented by the continuation (for what is now over a year) of the cost-free broad spectrum health plan which AK Steel previously provided to its AEIF-represented retirees. (Martorana Decl. ¶ 7.)

In summary, this is not strictly speaking a "common fund" fee petition, since it does not ask the Court to disburse monies from a fund created for the benefit of class members.  Plaintiffs would suggest (as do the cases cited above) that this difference simply lends further support to

---

19, 36, 79 Cal. Reptr. 2d 797 (2000), *citing In re Prudential Ins. Co. Of America Sales Practices Ligitation,* 148 F.3d 283, 336 (3rd Cir. 1998) (though case created no cash fund and attorney fees were paid directly to counsel, "the settlement was most closely aligned to the common fund paradigm and…a percentage of recovery calculation was the appropriate measure of the attorneys' fee award"); *In re Marion Merrell Dow, Inc. Sec. Litig.,* 965 F.Supp. 25 (W.D. Mo. 1997).

approval of the fee award. But while the Court should be guided first and foremost by the negotiated fee agreement between the parties, in determining whether the fee petition is "reasonable" under Fed. R. Civ. P. 23(h), it may and should look to analogous common fund cases and the case law thereunder. There is after all a "common fund" in this case – the VEBA – which will be created solely and uniquely for the benefit of class members.

      **1.**     ***The Court Should Follow the Trend in The Sixth Circuit and Calculate Fees Using a Percentage of the Fund Approach.***

Trial courts within the Sixth Circuit have discretion to calculate an award of attorneys' fees in common fund cases by using either 1) a percentage of the fund calculation or 2) a lodestar/multiplier approach. *Rawlings v. Prudential-Bache Properties, Inc.,* 9 F.3d 513, 516-17 (6th Cir. 1993). The overriding requirement is that the award "be reasonable under the circumstances." *Id.* at 516.

In the Sixth Circuit, the recent trend has been toward application of a percentage-of-the-fund method in common fund cases. *Rawlings,* 9 F.3d at 516-17; *Clevenger v. Dillards, Inc. Mercantile Stores Pension Plan,* Case No. C-1-02-558, 2007 U.S. Dist. LEXIS 17464, *7-8 (S.D. Ohio March 9, 2007); *In re Broadwing, Inc. ERISA Litigation,* Case No. 1:02-cv-00857, 2006 U.S. Dist. LEXIS 72609, *36-37 (S.D. Ohio, Oct. 5, 2006); *New England Health Care Employees Pension Fund v. Fruit of the Loom,* 234 F.R.D. 627, 633 (W.D. Ky. 2006); *In re: Cardizem CD Antitrust Litigation,* 218 F.R.D. 508, 532 (E.D. Mich. 2003) (collecting cases). As one district court in this circuit has observed, in an analysis often quoted approvingly by other courts:

> The lodestar method should arguably be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have been skeptical of applying the formula in common fund cases…. Many courts have strayed from using lodestar in common fund cases

and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees.

*Fournier v. Pfs. Invs.,* 997 F. Supp. 828, 832-33 (E.D. Mich. 1998) (quoted by, *inter alia, New England Health Care Employees Pension Fund,* 234 F.R.D. at 633; *In re Cardizem,* 218 F.R.D. at 532). An additional disadvantage of the lodestar method is the significant burden it places on the Court to review and calculate individual attorney hours, rates and expenses. *See, e.g., New England Health Care Employees Pension Fund,* 234 F.R.D. at 633; *In re Cardizem,* 218 F.R.D. at 532; *Manners v. American Gen'l. Life Ins. Co.,* 1999 U.S. Dist. LEXIS 22880, *87-88.

In determining whether the requested percentage of the fund is "reasonable under the circumstances," *Rawlings* at 516, courts in the Sixth Circuit consider six factors: 1) the value of the benefit rendered to the plaintiff class; 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; 3) whether the services were undertaken on a contingent fee basis; 4) the value of the services on an hourly basis; 5) the complexity of the litigation; and, 6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974). Looking to the *Ramey* factors here, the proposed fee award is reasonable, and should be approved.

> a. *Counsel secured substantial benefits for the Hourly Class during the litigation and for both Classes as a result of the Settlement Agreement.*

Courts frequently consider this factor to be the most critical to the approval of Plaintiffs' fee request. *See, e.g., Hensley v. Eckerhard,* 461 U.S. 424, 437 (1983). In this case, there can be no dispute that Class Counsel secured enormous benefits for the class. As discussed in detail *supra* and in the Martorana Declaration, the VEBA is expected to provide a solid retiree health plan for all class members throughout their lifetimes. By contrast, if AK Steel had ultimately won some or all of the litigation or declared bankruptcy at some future time, some or all of the

class members would be left with a markedly inferior and steadily worsening plan of benefits which the company could have unilaterally eliminated at any time.

In addition, Counsel generated significant benefits beyond the VEBA. During the litigation, Counsel obtained a preliminary injunction covering thousands of class members – the entire Hourly Class – which precluded AK Steel from making any changes to their benefits or those of their dependents, and which continues in effect to this day. As a result, members of the hourly group as well as their spouses and dependants have continued to receive comprehensive health care benefits at essentially no cost. (Martorana Decl. at ¶ 7; *see also* Declarations of Charlene Dunn, Ella Vester Henderson, Carolyn Walker, Edith Johnson, Oleta Bauer, Viretta Huff-Wells, Barbara Norton, Joanne Rikard, Edna Schultz and Rose Marie Snow in Support of Plaintiffs' Motion for a Preliminary Injunction, Attachments D – M.) As the retirees themselves have attested, without the preliminary injunction they would have suffered acute financial hardship as well as a decline in their mental and physical health. (*Id.*) These additional monetary and non-monetary benefits conferred by Counsel's efforts during the litigation are clearly relevant to determining a fee award. *See, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1049 (9th Cir. 2002) (citations omitted).

> b.  *Society has a significant stake in rewarding attorneys who preserve retiree health benefits.*

Multiple courts in the Southern District of Ohio have specifically found a significant public interest in rewarding attorneys who represent employees and retirees in ERISA litigation in order to protect their retirement funds. *Clevenger v. Dillards,* 2007 U.S. Dist. LEXIS 17464, *9; *In re Broadwing,* 2006 U.S. Dist. LEXIS 72609, *39-40. This finding is consistent with the policies underlying ERISA itself: to "protect the interests of participants in employee benefits plans…by establishing standards of conduct, responsibility and obligation for fiduciaries of

employee benefit plans…by providing for appropriate remedies, sanctions and ready access to federal court." 29 U.S.C. § 1001(b).  *See also Schultz v. Teledyne*, 657 F. Supp. 293 (W.D. Pa. 1987) ("the public interest is consistent with the preservation of retiree health insurance plans wherein former employers have contractually obligated themselves to provide ongoing health benefits after retirement in partial compensation for services performed prior to retirement"); *Schalk v. Teledyne*, 751 F. Supp. 1261, 1268 (W.D. Mich. 1990) ("undoubtedly, the public interest also lies in the preservation of a healthy population").  The public interest squarely supports the requested fee award.

c.      <em>Class Counsel took the case on a significantly discounted fee basis.</em>

While Class Counsel did not take this case on an entirely contingent basis, the facts and circumstances of this case are such that this factor, too, militates in favor of the requested fee award.  First, Class Counsel have charged hourly fees throughout the case at a deeply discounted rate – $180.00 per hour for all attorney time, including several hundred hours spent on the case by experienced, nationally recognized ERISA litigators who have each been practicing in excess of 25 years.  (Tedrow Decl. ¶¶ 6-7, 9; Martorana Decl. ¶ 5; Cook Decl. ¶¶ 3-5.)  Counsel thus risked *substantial* underpayment if the case was unsuccessful.  (*Id.*; see also *infra* at Section III.B.1.d.)  While the contingent nature of success is not as absolute in this case as in those where attorneys risk no payment whatsoever, Class Counsel in this case took a significant risk to their own pocketbooks and should be compensated accordingly.  *See, e.g., In re Broadwing,* 2006 U.S. Dist. LEXIS 72609 *40 (citations omitted).

Second, the retainer agreement between Counsel and the AEIF, which has almost exclusively funded the case to date, expressly provides that in the event of a fee recovery, Class Counsel will reimburse the Union for all fees and expenses it has paid.  (Tedrow Decl. ¶¶ 10-11.)

20

Class Counsel has a similar understanding with the retirees' Defense Fund. (*Id.*) Accordingly, a significant portion of this award will go to repay the laudable contribution the Union and the retirees themselves have made to the result achieved in this case. Such undertakings should be rewarded.

Finally, the fact that Class Counsel has been compensated on some level during the litigation is in no way inconsistent with recovery of fees via a percentage-of-the-fund approach under the common fund doctrine. In one of the earliest common fund cases before the Supreme Court, *Central Railroad and Banking Co. v. Pettus,* 113 U.S. 116 (1885), the petitioning attorney's clients had already been fully compensated by their clients for their service; thus the fee petition sought a premium for success achieved. The fee opponents argued that a court could only reimburse the amount the clients had originally paid. The Court rejected this argument out of hand, holding that "[t]he creditors who were entitled to the benefit of the decree had only to await its execution in order to receive the full amount of their claims; and that result was due to the skill and vigilance of the [attorneys]." *Id.* at 126. The Court held that counsel had earned a right to "reasonable compensation for their professional services in establishing [the common fund]" – compensation above and beyond the fixed fees which they had already been paid. *Id.* To achieve this premium, the Court awarded counsel a percentage of the fund that their efforts had secured. *Id.* at 128. Thus, *Pettus* established that a common fund award constitutes an equitable claim, one belonging directly to counsel who create or preserve a fund for the benefit of others. Courts continue to apply the principles laid down by *Pettus* today. *See, e.g., In re Sulzer Prosthesis Liability Litigation,* 268 F.Supp.2d 907, 937 (S.D. Ohio 2003) (awarding percentage of common fund to counsel and rejecting objections that the common fund award

should be reduced because the attorneys were also being compensated via fee arrangements directly with their clients.)

For the foregoing reasons, application of the third *Ramey* factor to this case also counsels in favor of awarding the requested fee amount.

> d.    *Class counsel have devoted substantial time to this case to date, and anticipate significantly more time over the coming months or years.*

Courts often engage in a truncated lodestar method as a crosscheck of the percentage-of-recovery method.  This approach can provide additional confirmation as to the reasonableness of the award.  *See, e.g., Vizcaino,* 290 F.3d at 1050-51; *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.,* 55 F.3d 768, 820-21 (3rd Cir. 1995).  In lodestar calculations, the Court begins with the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Building Svcs. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir. 1995).  To determine an attorney's reasonable hourly rate, the Sixth Circuit has held that district courts may "look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases."  *McHugh v. Olympia Entertainment, Inc.,* 37 Fed. Appx. 730, 730 (6th Cir. 2002).  Courts also look at affidavits provided by other attorneys who are familiar with market rates in the field, as well as other evidence as to the prevailing market rates of compensation in the relevant legal market for similar work.  *See, e.g., Building Svc. Local 47,* 46 F.3d 1392, 1402.

However, "the product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead a district court to adjust the fee upward or downward…"  *Id.* (citations omitted).  Courts typically do adjust fee awards upwards in common fund cases, increasing the lodestar amount by a multiple of several times itself.  Courts

regularly apply these "multipliers" within a normal range of between 2 and 5 to account for factors such as the complexity of the case, the risks involved, the size of the recovery, Counsel's continuing obligations to the class, and the range of multipliers awarded in similar cases. *See, e.g., Vizciano,* 290 F.3d at 1051; *Wing v. Asarco Inc.,* 114 F.3d 986, 989 (9th Cir. 1997); *Sulzer Prosthesis Liab. Litig.,* 268 F. Supp. 2d at 922 (citations omitted); *Manners v. Amer. Gen'l Life Ins. Co.,* 1999 U.S. Dist. LEXIS 22880, *92-94.

In this case, Plaintiffs have determined that reasonable hourly rates for the work performed in this case range from $450 per hour for Ms. Tedrow, Mr. Martorana and Mr. Cook, all of whom have been practicing law for over 25 years and all whom have amassed considerable expertise in complex ERISA litigation, to $100 per hour for law clerks and paralegals. (Tedrow Decl. ¶ 22.)  In support of these rates, Plaintiffs have provided the Court with, *inter alia,* numerous examples of similar rate awards for similar cases, compilations of billable rates charged all over the country, and a declaration from William T. Payne, one of the leading ERISA welfare benefits litigators in the nation.[13]  (Tedrow Decl. ¶¶15-21 and Exhibits 4-8).

The hours of work performed by Class Counsel and their firms through November 27, 2007 total approximately 2100.[14]  (Tedrow Decl ¶ 13; Cook Decl. ¶ 6.)  Moreover, plaintiffs' counsel anticipate a substantial amount of attorneys' time will be spent performing additional work on this case, including responding to class members' questions during the notice period, preparing briefs to respond to objections and motions to intervene, preparing a final brief

---

[13] In his affidavit, Mr. Payne attests not only to the reasonableness of the hourly rates in and of themselves, but also to the reasonableness of the $3,000,000 as a negotiated fee agreement between the parties which does not detract from the retirees' recovery and represents less than one half of one percent of that recovery.  (Declaration of William T. Payne ("Payne Decl.") attached hereto as Exhibit 4, ¶¶ 12-14.)

[14] Plaintiffs' counsel have provided the Court with an hourly summary for each attorney for whose work Plaintiffs are claiming fees, as well as a biography and relevant additional information detailing the reasonable hourly rate for each.  (*See generally* Tedrow Decl. and its Exhibits; Cook Decl. ¶¶ 9-11.)  If the Court requires a more detailed fee itemization, such information can be provided.

supporting the settlement, preparing for and attending the fairness hearing, and following up on obligations arising out of the proposed settlement. (Tedrow Decl. ¶ 14; Martorana Decl. ¶¶ 9, 11; Cook Decl. ¶ 12.) They estimate, conservatively, that they will expend at least 500 additional hours in the future, and significantly more if the final hearing is delayed or the settlement is appealed. (*Id.*) Applying these same reasonable rates for each attorney's time going forward from November 27, 2007 and adding them to the fees already accrued, Class Counsel conservatively estimates its lodestar fees will total approximately $ 975,575.00 by the conclusion of the litigation, and expenses will total about $36,000.[15] (Tedrow Decl. ¶¶ 23-24.)

Plaintiffs request a fee and expense award in this case totaling $3,000,000 in this case, which results in a fee multiplier of 3.04. This multiplier is fully warranted given the complexity of the case, attendant risks, size of the settlement fund, counsel's continuing obligations to the class, and is well within the range of multipliers awarded in similar litigations. *See, e.g., Vincianzo,* 290 F.3d at 1051 (awarding multiplier of 3.65 in ERISA class action); *Forbrush v. J.C. Penney Co.,* 98 F.3d 817, 820-22 (5th Cir. 1996) (recognizing common fund award in ERISA class action where Plaintiffs' lawyers received multiplier of between 4.6 and 8.2); *In re Broadwing,* 2006 U.S. Dist. LEXIS 72609, *38 (finding that a multiplier of between 2.0 and 5.0 would be within the appropriate range for ERISA class action); *Manners,* 1999 U.S. Dist. LEXIS 22880, *93-94 (awarding multiplier of 3.8 in case which, as here, resulted in settlement fund in excess fund of $100,000,000 and collecting "similar cases" in which multipliers ranged from 2.2 to 5); *Local 56 UFCW v. Campbell Soup,* 954 F. Supp. at 1004, 1005 n.7 (awarding 2.4 multiplier in ERISA class action). Moreover, the fee calculations, including the 3.04 multiplier

---

[15] As part of the $3,000,000 request, Class Counsel seeks reimbursement of expenses incurred for, *inter alia,* on-line research services, copying, attorney travel, court reporting services and transcripts, postage, telephone and filing fees. Such fees have been held to be reasonably incurred in the prosecution of similar litigation. *In re Cardizem,* 218 F.R.D. 508, 535 (E.D. Mich. 2003) Expenses total approximately $29,000 as of November 27, 2007, and class counsel conservatively estimates they will accrue an additional $7,000. (Tedrow Decl. ¶ 24; Cook Decl. ¶ 6.)

24

in this case, assumes that the final hearing in this case will not be delayed and that the settlement will not be appealed.  (Martorana Decl. ¶ 11.)  If either of these events occur, class counsel's hours will significantly increase and the multiplier will significantly decrease.

In this case, the lodestar/multiplier analysis further confirms the reasonableness of the requested fees.

> e.  *Complexity of Litigation.*

As this Court has noted, "an ERISA case involves a highly-specialized and complex area of law."  *In re Broadwing,* 2006 U.S. Dist. LEXIS 72609, *40.  The type of claims here, vesting of retiree health benefits, are both factually and legally complex.  In this case, counsel had to synthesize over fifty years of collective bargaining agreements and summary plan descriptions, among many other documents, to generate Plaintiffs' factual arguments.  Moreover, as the Court is doubtless well aware, the legal question of whether and when retiree benefits vest is far from settled.  There is a multiplicity of decisions on this issue nationwide, nearly all of them lengthy and heavily fact-based, which expose significant conflicts between the approaches adopted by different circuits.  The complexity of this litigation also supports the requested fee award.

> f.  *Skill of Counsel.*

As is apparent from the work product produced both during the litigation of this case and its settlement, counsel on both sides of the table possess the skill to handle this complex ERISA class action.  Mr. Martorana, Ms. Tedrow and Mr. Cook's Declarations detail the high degree of experience, skill and reputation of Class Counsel.  Likewise, Gregory Parker Rogers and Justin P. Flamm, two of the lawyers who have performed leading roles in representing AK Steel, also possess a high level of experience and skill.  *See, e.g.,* http://www.taftlaw.com/attorneys/71-gregory-parker-rogers and http://www.taftlaw.com/attorneys/62-justin-d-flamm (both sites last

visited November 27, 2007).  This final *Ramey* factor also counsels in favor of granting the requested fee and expense award.

> **2.      A Comparison of the Percentage of Recovery Between This Case and Similar Common Fund Cases Shows Beyond Doubt That the Fee Request Is Reasonable.**

While not expressly included in the six *Ramey* factors, courts in this Circuit almost invariably compare the requested percentage-of-recovery with the percentages awarded in similar common fund cases in determining the reasonableness of the fee request.  In this case, Plaintiffs' request for fees and expenses totals *less than one half of one percent* of the cash value of the settlement, even putting aside the monetary benefits achieved through the Preliminary Injunction.  This represents a far lower percentage than those usually awarded in common fund cases in this Circuit or any other.  In 2001, the Third Circuit reviewed a range of percentage-of-recovery awards in common fund cases across the country where, as in the instant case, the settlement fund exceeded $100,000,000.  *In re Cendant Corp. Prides Litig.,* 243 F.3d 722 (3rd Cir. 2001).  The *Cendant* court noted that the percentage-of-recovery in these "mega fund" cases should be significantly lower than the percent awarded in smaller settlements; otherwise, attorneys would be collecting unreasonably large fees.  *Id.* at 736.  The *Cendant* court then listed 18 cases with common funds ranging from $100 million to $3.16 billion, and found that common fund fee awards, when measured as a percentage of the fund, ranged from 2.8% to 36.0%, with more than half the cases measuring at 10% or more.  *Id.* at 737.  The fee request in this case represents a fraction of the *lowest* fee award mentioned in *Cendant.*

The percentage-of-award requested in this case is equally low by any other measure.  *See, e.g., In re Sprint Corporation ERISA Litig,* 443 F.3d 12 1249, 1271 (10th Cir. 2006) (affirming district court's award of 16% of settlement fund in ERISA class action); *Vizcaino,* 290 F.3d

1043, 1046, 1052 (affirming district court's award of 28% of common fund in ERISA class action); *Clevenger,* 2007 U.S. Dist. LEXIS 17464, *10-12 (ERISA retiree benefits case awarding 29% of common fund, and collecting Sixth Circuit cases awarding 20% - 50% of the funds in fees); *In re Broadwing,* 2006 U.S. Dist. LEXIS 72609, *32, 46 (awarding 23% of fund in ERISA class action).

The fees requested in this case may be most analogous to *Local 56, UFCW v. Campbell Soup,* 954 F. Supp. 1000 (D.N.J. 1997). In that case, like this one, Plaintiffs' counsel represented a group of retirees whose medical benefits had been unilaterally reduced. In that case, like this one, the settlement fund exceeded $100,000,000. And in that case, like this one, the parties negotiated fees to be paid separate and apart from the common fund – fees representing 2.8% of the settlement obtained for the class. The Court approved the fee petition in its entirety, observing:

> On their own and in recognition of their clients' limited financial means, counsel for the plaintiff class have requested an attorneys' fee award at a percentage rate far below the customary amount courts have granted in comparable cases. That request…this court funds reasonable, especially in light of both the size and the unique structure of the settlement counsel achieved for the class. An award of $3,239,373 provides just compensation for experienced counsel who wagered significant sums over the course of several years and achieved a tremendous and invaluable result for their clients. The class members, in turn, retain all that the settlement provides; they do not lose any of the negotiated benefits on account of an attorneys' fee and costs award that equals the "cap" set forth in the settlement.

*Id.* at 1005. This is precisely the situation the parties present to the Court in this case: an agreed-upon settlement between the parties providing for extremely modest attorneys' fees, structured in such a way as to provide the maximum benefit to the class. In this case, as in the *Campbell Soup* case, the requested fee award should be approved in its entirety.

27

# IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this motion be granted and

that the Court approve the payment by AK Steel of costs and fees in the amount of $3,000,000 to

class counsel.

Dated: November 29, 2007                          Respectfully submitted,

                    By:    /s/ Sally M. Tedrow                  
                               Sally M. Tedrow
                               Francis J. Martorana
                               Jennifer Simon
                               **O'DONOGHUE & O'DONOGHUE LLP**
                               4748 Wisconsin, Ave., N.W.
                               Washington, D.C. 20016
                               (202) 362-0041
                               stedrow@odonoghuelaw.com
                               fmartorana@odonoghuelaw.com
                               jsimon@odonoghuelaw.com

                    By:    /s/ David M. Cook                   
                               David M. Cook (Ohio Bar # 0023469)
                               **COOK, PORTUNE & LOGOTHETIS**
                               An Association of Law Corporations
                               22 West Ninth Street
                               Cincinnati, Ohio 45202
                               (513) 721-7500
                               dcook@dmcllc.com

                               **Attorneys for Plaintiffs**

170358_1

28