UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MICHAEL A. BAILEY, *et al.*, Individually and on behalf of all others similarly situated, | Case No. 1:06-cv-468 |
| Plaintiffs, | Judge Michael R. Barrett<br>Magistrate Judge Timothy S. Black |
| vs. | |
| AK STEEL CORPORATION, | |
| Defendant. | |

**OPINION AND ORDER DENYING MOTION TO INTERVENE (Doc. 59)**

**I. The Motion At Issue.**

This civil action is before the Court upon four individuals' Motion to Intervene, Allow Discovery; and Extend All Deadlines for 90 Days (Doc. 59). The parties have consented to entry of judgment on the Motion by the United States Magistrate Judge.[1]

The Movants seek to intervene both as a matter of right under Federal Rule of Civil Procedure 24(a) and permissively under Fed. R. Civ. P. 24(b).

"Rule 24 should be 'broadly construed in favor of potential interveners.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991)). "But this does not mean that Rule 24 poses no barrier to intervention at all." *Id.*

---

[1] Doc. 83 and Docs. 72, 73, & 74; *see U.S. ex rel. Koch v. Koch Industries, Inc.*, Case No 91-CV-763-B, 1995 WL 812134, *18 at n. 1 (N.D. Okl. 1995).

## II. Statement of the Case

This is a civil action brought by nine AK Steel retirees, individually and on behalf of all others similarly situated, against their former employer, now AK Steel Corporation, seeking to stop defendant from reducing or eliminating their health benefits.

On July 18, 2006, some 17 months ago, plaintiffs filed their complaint (Doc. 1), and shortly thereafter, on September 22, 2006, achieved a Court-ordered preliminary injunction enjoining AK Steel from altering any health benefits until final disposition of this lawsuit. (Doc. 27). One of the four factors upon which the Court chose to enter the preliminary injunction was a finding that plaintiffs had presented a sufficient likelihood of success on the merits of their lawsuit at trial. (*Id.* at 4-15).

On October 16, 2006, the Court entered a Scheduling Order (Doc. 38) setting:

February 15, 2007 as the deadline for filing a motion for class certification;
March 30, 2007 as the fact discovery deadline;
July 16, 2007 as the deadline for dispositive motions; and
January 14, 2008 as the commencement of jury trial.

The plaintiffs timely filed a motion to certify class and to appoint class counsel on February 16, 2007 (Doc. 40). The motion sought certification of "mandatory" classes from which no class member could opt out. (*Id.*).

That motion remained pending, when, in July though October 2007, the Court held at least six separate conferences with the parties resulting in the achievement of a proposed settlement of the case as a class action. (*See* docket entries from 6/29/07 through 10/25/07).[2]

On October 25, 2007, the plaintiffs filed a renewed motion to certify class[es] and to appoint class counsel (Doc. 50), and the parties filed a joint motion for order to preliminarily approve class action settlement (Doc. 51). Within ten days, the Court granted the motion to certify the class (Doc. 55) and granted the motion to preliminarily approve the settlement (Doc. 58). The Court set the fairness hearing for February 12, 2008. (*Id.*).

On November 27, 2007, within essentially one month of learning of the proposed settlement, the present prospective interveners filed their motion to intervene (Doc. 59).

---

[2] An attentive observer of the Court's electronic docket in July and August of 2007 would have learned that extended settlement negotiations were underway.

-2-

A. The Nub of the Dispute re Intervention.

1. Movants' Version.

In support of their motion to intervene, movants present, *inter alia*, the affidavit of Robert A. Steinberg, Esq., wherein he represents the following:

> " ... Prior to the filing of the instant case, my law firm [Waite, Schneider, Bayless & Chesley Co., L.P.A.] and I undertook representation of numerous hourly and salaried auxiliary retirees of AK Steel who were concerned about the Company's elimination of health care benefits they believed were vested rights pursuant to collective bargaining agreements. During my investigation of their claims, I participated in a number of conversations via telephone and in person with attorney David Cook [present plaintiffs' counsel]. ... During these conversations, I made Mr. Cook aware that my law firm intended to file a class action lawsuit to protect the rights of the retirees.
>
> On or about Monday, July 17, 2006, Mr. Cook telephoned me and advised me that a law firm known as O'Donoghue & O'Donoghue, of Washington, D.C., would be filing a class action lawsuit making the same allegations that Mr. Cook and I had been discussing for some time, and that he would be acting as their local counsel. On Tuesday, July 18, 2006, at 1:23 p.m., the instant case was filed. Mr. Cook was listed as Trial Counsel for Plaintiffs and the O'Donoghue law firm was listed as co-counsel. Because of the prior discussions I had with Mr. Cook, I was very surprised that he had filed a case with the same claims he and I had discussed before my firm had finalized our class action complaint.
>
> After reviewing the claims in the Complaint filed in the instant case and determining that they were essentially the same claims I had discussed with Mr. Cook, my firm determined that it would not be in the best interests of our clients, who were all prospective class members, or in the best interests of the class, to file a competing class action lawsuit before a different judge.

Beginning in July 2006 and continuing through October 2007, I engaged in numerous telephone conversations and e-mail exchanges with attorney Sally Tedrow of the O'Donoghue law firm. During those conversations, I agreed on behalf of my law firm not to file a competing class-action lawsuit. ... Ms. Tedrow agreed that, in the event settlement negotiations were begun, my law firm would be consulted and made a part of any settlement negotiations so that we could protect the rights of our clients, which number approximately 300, and are all prospective class members. She told me that my law firm's extensive experience in complex class action lawsuits and settlements would be important to the resolution of the case in the event of settlement. At no time during these discussions did Ms. Tedrow inform me that settlement discussions were taking place. ... It was always my understanding that my law firm, on behalf of our clients, would be at the bargaining table for any settlement of this case.

... At no time prior to the public press release issued by the parties did Ms. Tedrow inform me that the Plaintiffs had entered into settlement negotiations or that a settlement had been reached. Nor did she provide my law firm with the opportunity to participate in the settlement discussions in order to protect the interests of our clients, who are all prospective class members. ...

The terms of this [settlement] agreement, and the failure to include my law firm in settlement negotiations on behalf of the numerous prospective class members we represent, raised serious questions in my mind as to whether the class was being adequately represented. I promptly took steps to locate and retain a well-qualified actuarial consultant to assist me in determining what examination was necessary in order to properly assess the adequacy of the settlement and I affiliated Richard Wayne and Glenn Whitaker, very experienced class action counsel in two other law firms, to protect the interests of our clients. ...

> Ms. Tedrow and her co-counsel did not provide me the key information I needed to protect the rights of my clients. During our conversations, they did not inform me that plaintiffs had begun settlement negotiations in July 2007 without my law firm's participation, they did not fulfill their promise to include our firm in those negotiations so that we could bargain on behalf of the class and our clients, they did not consult with us about the adequacy of the settlement, and they did not inform us of the settlement terms they intended to agree to. ... Thus, the key information needed to challenge the settlement, i.e., the existence of settlement negotiations and the terms of settlement being discussed, were concealed from my law firm throughout my discussions with Ms. Tedrow. ...
>
> Once we finally received the settlement terms late on the afternoon of October 25, 2007, we have acted as quickly as possible to retain experts, obtain pertinent information, and move to intervene to protect the proposed class members we represent."

(Doc. 78-1; Affidavit of Robert A. Steinberg).

  2. Plaintiffs' Version.

In opposition to the motion to intervene, plaintiffs present, *inter alia*, the verified declaration of Sally M. Tedrow, Esq., wherein she represents the following:

> " ... O'Donoghue was first contacted regarding representation of the Plaintiff Classes on June 8, 2006, shortly after AK Steel Corporation ("AK Steel") issued a notice announcing its intention to unilaterally reduce retiree benefits for retirees who had been represented by Armco Employees Independent Federation ("AEIF") during their employment. ...
>
> I did not learn until on or about June 21, 2006 that the Cincinnati firm of Waite, Schneider, Bayless & Chesley Co., L.P.A. had separately undertaken to represent some AK Steel retirees in their claim to retiree health benefits. ...
>
> My partner... and I decided to contact the Cincinnati law firm of Cook, Portune & Logothetis ("Cook") and ask that they appear as co-counsel for plaintiffs in the class action lawsuit

against AK Steel .... On June 21, 2006, we called David Cook and asked him if he would appear as co-counsel with us ... [and] Mr. Cook agreed to do so. ...

My partner ... and I had a number of conversations in late July and/or early August 2006 with Stanley M. Chesley and Robert A. Steinberg of the firm of Waite, Schneider, Bayless & Chesley Co., L.P.A. ... At the time of those conversations, Mr. Chesley and Mr. Steinberg indicated that they represented a number of AK Steel retirees threatened with benefit cuts. ...

First, I would like to make clear that there was no "agreement" between Mr. Steinberg and myself that his law firm would not file a competing class action lawsuit. Certainly, this firm was in no position to prevent Mr. Steinberg from taking such a step and we did not prevent him from doing so. Mr. Steinberg and I discussed various possible scenarios, including the following: that his law firm might file a competing class-action, that they might become involved in the lawsuit we had already filed and seek appointment as class counsel or as co-class counsel and that they might file a state action on behalf of his firm's retiree clients. ...

While Mr. Steinberg and I did discuss the possibility of his firm becoming involved in settlement discussions, should such occur, there was no promise or commitment that his firm would be consulted and made part of any settlement negotiations. There was certainly no understanding that Mr. Steinberg's firm would function as "independent counsel for the retirees," as stated in Movants' reply memorandum. To the contrary, Mr. Steinberg was well aware from multiple conversations that the Plaintiffs and O'Donoghue planned to seek, and in February 2007 did seek, certification of a class and appointment as class counsel.

When the possibility of settlement discussions was raised in conversations among the Court and the parties in the summer of 2007, it was made clear from the outset that the negotiations were to remain confidential. ...

> [O]nce he learned of the settlement through the newspaper ... on Monday, October 8, 2007, ... Mr. Steinberg called me .... He congratulated me on the settlement. He stated he would like to get the details of the settlement to his clients. He further stated that this would likely end his firm's involvement in the matter. He did express disappointment at having learned of the settlement through the newspaper. ...
>
> [W]e did not promise to involve his firm in settlement negotiations. Any understanding in that regard was informal at best, as Mr. Steinberg himself acknowledged in at least one of our conversations. When the Court directed that the settlement negotiations be kept confidential, I had every reason not to disclose them to Mr. Steinberg, notwithstanding his apparent opinion to the contrary. ...
>
> It is specifically incorrect for Mr. Steinberg to state that "the existence of settlement negotiations and the terms of settlement being discussed ... were concealed from my law firm throughout my discussions with Ms. Tedrow." To the contrary, I have no record or recollection of any communication from Mr. Steinberg that occurred during the period of time when the parties were engaged in settlement discussions. ... I have a record of only one conversation with Mr. Steinberg between November 2006 and October 2007, and that conversation occurred in March 2007. ...
>
> When we filed Plaintiffs' motion for class certification on February 15, 2007, we requested certification of a "mandatory" class under either Rule 23(b)(1) or Rule 23(b)(2). On or about November 27, 2006, and in one or more prior conversations, I advised Mr. Steinberg of the deadline for the motion for class certification. On or about March 19, 2007, Mr. Steinberg, and I had a telephone conversation in which we discussed the fact that the class certification motion had been filed. During these conversations, Mr. Steinberg did not express any disagreement with the request for certification of a mandatory class."

(Doc. 80-2; Second Declaration of Sally M. Tedrow).

### 3. The Conundrum.

These competing affidavits reflect the nub of the parties' dispute. That is, Movants claim that they were wrongfully "kept in the dark" about the settlement negotiations, in derogation of plaintiffs' class counsel's express promise to them; and in turn, plaintiffs claim that no promise was ever made to Movants to include their counsel in settlement negotiations.

This standoff gives rise to Movants' primary assertion that "[t]he terms of this [settlement] agreement, and the failure to include my law firm in settlement negotiations on behalf of the numerous prospective class members we represent, raised serious questions in my mind as to whether the class was being adequately represented." (Doc. 78-1 at p. 4).

The Movants claim further that the proposed settlement agreement is not adequate, fair, nor reasonable. And Movants now further claim in their reply memorandum that class counsel cannot adequately represent the class because of a purported conflict of interest relating to representation of the retirees' Union.

Against this backdrop, a review of the law pertaining to intervention eases resolution of the dispute considerably, as follows.

### IV. The Law of Intervention

As to intervention as a matter of right, Rule 24(a) provides in pertinent part:

> "Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24 (a).

The United States Court of Appeals for the Sixth Circuit has set fourth four criteria to resolve a motion to intervene as a matter of right: "(1) the application to intervene must be timely; (2) the applicant must have a substantial, legal interest in the subject matter of the pending litigation; (3) the applicant's ability to protect that interest must be impaired; and (4) the present parties do not adequately represent the applicant's interest." *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989); *see also Coalition v. Blackwell*, 467 F.3d 999, 1007 (6th Cir. 2006). The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *Id.*

### 1. Timeliness

"The determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).

The Sixth Circuit has identified several factors to be established in determining whether a request to intervene is timely: (a) the point to which the suit has progressed; (b) the purpose for which intervention is sought; (c) the length of time preceding the application during which the applicant knew or reasonably should have known of its interests in the case; (d) prejudice to the original parties due to the failure of the applicant to apply promptly for intervention upon acquiring the knowledge of its interest; and (e) any unusual circumstances of the case. *Triax v. TRW, Inc.*, 724 F.2d 1224, 1228 (6th Cir. 1984); *Michigan Ass'n for Retarded Citizens v. Smith*, 657 F.32d 102, 105 (6th Cir. 1981).

(a) The Point to Which the Suit Has Progressed.

Movants have known of this litigation, and have had experienced counsel representing them, since July 2006. Rather than move to intervene at an earlier stage, or to seek appointment as class representatives, or to oppose the appointment of the existing class representatives or class counsel, Movants have waited until after a provisional settlement has been reached to file their petition. This is fatal to their motion.[3]

Parties must move to intervene as soon as they know that class action litigation may effect their interests. *Id.* Here, Movants knew from day one that this class action litigation would effect their interests. Accordingly, given the point to which this suit has progressed, *e.g.*, after 17 months of litigation, and 14 months after a contested preliminary injunction, and 9 months after a motion to certify class and appoint class counsel, and after extensive discovery, and within less than two months before trial,[4] the motion to intervene is untimely.

---

[3] *See Stotts v. Memphis Fire Department*, 679 F.2d 579, 582-584 n.3 (6th Cir.), *cert. denied*, 459 U.S. 969 (1982); *see also Johnson v. City of Memphis*, No. 01-6111, 2003 U.S. App LEXIS 16096 *21-23 (6th Cir. 2003); *United States v. State of Tennessee*, 260 F.3d 587 (6th Cir. 2001); *Ruggles v. Bulkmatic Transport Co.*, Case No. 2:03-cv-00617, 2007 U.S. Dist. LEXIS 14345 *5-6 (S.D. Ohio February 7, 2007); *Sullivan v. DB Investments, Inc.*, Civil Action No. 04-2819, 2006 U.S. Dist. LEXIS 17189 *10-12 (D. N.J. April 5, 2006).

[4] Indeed, trial of this case was scheduled to begin today, but for the emergence of the proposed settlement agreement. (Doc. 38).

(b) The Purpose for Which Intervention Is Sought.

Here, the primary purposes in moving to intervene, *e.g.,* to investigate and evaluate the fairness of the proposed settlement, is a function that Movants can fully perform as objectors upon the fairness hearing.[5] Moreover, this Court has held that "the law does not require the participation in settlement negotiations of other lawyers representing absent class members."[6]

(c) The Length of Time Movants Knew of Their Interest in this Case.

As discussed *supra,* Movants knew from day one that this class action litigation would effect their interests, and yet they failed to timely move to intervene.[7]

(d) Prejudice to the Parties Due to Movants' Delay in Moving to Intervene.

The parties are prejudiced by the Movants' delay in moving to intervene because the settlement will be disrupted and delayed, undermining the very purposes of <u>any</u> settlement.

Thus, **all** of the criteria by which timeliness is to be evaluated strongly compel the factual finding and legal conclusion that the motion to intervene is not timely. The failure of the Movants to demonstrate that their motion to intervene is timely, in and of itself alone, compels denial of intervention. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) ("<u>The proposed intervener must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied.</u>" (emphasis supplied)). Accordingly, the motion fails under both intervention of right and permissive intervention.[8]

Nonetheless, the Court also addresses the additional factors relevant to a motion to intervene, beyond timeliness, as follows.

---

[5] *See Ruggles v. Bulkmatic Transport Co.*, Case No. 2:03-cv-00617, 2007 U.S. Dist. LEXIS 14345 *6-7 (S.D. Ohio February 7, 2007); *Thompson v. Metro. Life Insurance Co.*, 216 F.R.D. 55, 70 (S.D.N.Y. 2003); *In re DHP Indus., Inc. Class Action Litigation*, 2007 WL 2907262, *2 (E.D.N.Y. September 30, 2007); *see also UAW v. General Motors Corp.*, Case No. 05-CV-73991-DT, 2006 U.S. Dist. LEXIS 8642 *14 (E.D. Mich. February 13, 2006).

[6] *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 146 (S.D. Ohio 1992).

[7] *See Stotts v. Memphis Fire Department*, 679 F.2d 579, 582-85 (6th Cir.), *cert. denied*, 459 U.S. 969 (1982); *see also Johnson v. City of Memphis*, No. 01-6111, 2003 U.S. App LEXIS 16096 *21-23 (6th Cir. 2003); *United States v. State of Tennessee*, 260 F.3d 587 (6th Cir. 2001); *Ruggles v. Bulkmatic Transport Co.*, Case No. 2:03-cv-00617, 2007 U.S. Dist. LEXIS 14345 *5-6 (S.D. Ohio February 7, 2007); *Sullivan v. DB Investments, Inc.*, Civil Action No. 04-2819, 2006 U.S. Dist. LEXIS 17189 *10-12 (D. N.J. April 5, 2006).

[8] Fed. R. Civ. P. 24(a) requires: "Upon timely application ...."; and Fed. R. Civ. P. 24(b) likewise requires: "Upon timely application ...."

### 2. The Movants' Interests in This Case.

The Movants clearly have substantial legal interests in this case. They are class members. The settlement will bind them. The finding that they cannot be added as parties at this late date does not preclude their meaningful participation in educating the Court as to whether or not the settlement agreement is fair, adequate and reasonable.[9]

### 3. Movants' Ability to Protect Their Interests Is Not Impaired Absent Intervention.

Movants cannot establish that their ability to protect their interests will be impaired absent intervention. Movants can fully protect their interests in this class action by invoking their right to object to the proposed settlement under the procedures established by this Court. The availability of this procedure defeats Movants' ability to satisfy this factor.[10]

The Movants' failure to establish this factor is a second, dispositive reason the motion to intervene must be denied – separate and apart from lack of timeliness. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

### 4. Whether the Present Parties Adequately Represent the Movants.

Mere dissatisfaction with the terms of a proposed class action settlement is insufficient to prove that the interests of class members are not adequately represented by their class representatives.[11] Ultimately, the Court will determine at the fairness hearing whether or the settlement is fair, reasonable and adequate. Here, at this stage, the Movants and the plaintiffs have the same ultimate objective of maintaining retiree health benefits, and when proposed interveners and existing class representatives have the same ultimate objective in the lawsuit, the Court initially presumes adequacy of representation, *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987), and relies upon objectors to present their positions at the fairness hearing.

---

[9] The well-established procedure for obtaining judicial approval of a class action settlement under Federal Rule of Civil Procedure 23(e) protects Movants. That procedure gives Movants the opportunity to file objections, to be heard at the fairness hearing on February 12, 2008, and requires the Court to find that the settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).

[10] *See Ruggles v. Bulkmatic Transport Co.*, Case No. 2:03-cv-00617, 2007 U.S. Dist. LEXIS 14345 *6-7 (S.D. Ohio February 7, 2007); *Thompson v. Metro. Life Insurance Co.*, 216 F.R.D. 55, 70 (S.D.N.Y. 2003); *In re DHP Indus., Inc. Class Action Litigation*, 2007 WL 2907262, *2 (E.D.N.Y. September 30, 2007); *see also UAW v. General Motors Corp.*, Case No. 05-CV-73991-DT, 2006 U.S. Dist. LEXIS 8642 *14 (E.D. Mich. February 13, 2006).

[11] *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).

Movants' challenge to the independence of class counsel based on relationships with the retirees' union is unavailing. There is no inherent conflict of interest in counsel representing both the union and a retiree class, nor is there anything improper about a union providing funds or other support for class action or collective action lawsuits on behalf of retirees, former employees or other persons not represented by the union. *See Intl. Union, United Automobile Workers v. General Motors Corp.*, 497 F.3d 615, 625-28 (6th Cir. 2007).[12] Union involvement does not create a conflict, and class counsel and the class representatives can adequately represent the interests of the class members.

In sum, therefore, Movants fail to satisfy the first, third, and fourth elements of the four part proof required to intervene, and the failure of proof on any one element alone compels denial of intervention. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

### 5. Whether Further Discovery and Delay Are Warranted.

Finally, while objectors are entitled to meaningful participation in the settlement process, they are not automatically entitled to discovery or to question and debate every provision of the proposed compromise. *In re General Tire and Rubber Co. Securities Litigation*, 726 F.2d 1075, 1084 (6th Cir. 1984). Here, the Movants have been given access to a significant amount of information, including nearly every item identified in their motion, rendering them fully capable of meaningfully participating in the fairness hearing.[13]

Moreover, the delay requested by Movants would accomplish no purpose but for to disrupt the calendar previously set by the Court and already disseminated to the class members. Here, in the present case, from the date the class notice was mailed, the class members have 45 days to file an objection to the settlement agreement and 95 days to prepare for the fairness hearing. This timetable established by the Court in this case is consistent with timelines approved by federal courts in similar cases.[14]

---

[12] *See also Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 663-64 (E.D. Mich. 1995); *Coffin v. Bowater Inc.*, 228 F.R.D. 397, 405 & n. 9(D. Maine 2005); *Trull v. Dayco Products, LLC*, 214F.R.D. 397, 404 (W.D.N.C. 2003); *McClendon v. The Continental Group Inc.*, 113 F.R.D. 39, 42–43 (D.N.J. 1986).

[13] If the objectors made a clear and specific showing that vital material was not before the Court at the fairness hearing, the Court could, of course, require additional evidentiary hearing on the propriety of the proposed settlement. *See Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986).

[14] *See UAW v. General Motors Corp.*, 497 F.3d 615, 622 (6th Cir. 2007); *Moran v. Wunderlich*, 242 F.R.D. 387, 389 (S.D. Ohio 2007); *Arena v. ABB Power T&D Co., Inc.*, 2007 WL 2705583 (S.D. Ind. 2007); *Pierce v. Navistar Mortgage, Inc.*, 2007 WL 1847216 (W. D. Wash 2007); *In re BankAmerica Corp. Sec. Litig.*, 10 F.R.D.697, 708 E.D. Mo. 2002).

## V. Conclusions.

Accordingly, in sum, the Court concludes that Movants' motion to intervene is not timely. Moreover, Movants's interests are not impaired as they may present their objections to the Court at the fairness hearing. Further discovery and delay is neither necessary nor warranted. Thus, the Court denies the motion to intervene, allow discovery, and extend all deadlines (Doc. 59).

This is a final, appealable order, there is no just reason for delay, and the Court shall forthwith enter judgment against the proposed interveners.

**IT IS SO ORDERED.**

Date: 1/14/08

*Timothy S. Black*
Timothy S. Black
United States Magistrate Judge