UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BAILEY, et al., | : | Case No. 1:06cv468 |
| | : | |
| Plaintiffs, | : | Magistrate Judge Black |
| | : | |
| v. | : | |
| | : | |
| AK STEEL CORPORATION, | : | MOTION OF DEFENDANT |
| | : | AK STEEL CORPORATION FOR |
| Defendant. | : | FINAL APPROVAL OF CLASS |
| | : | ACTION SETTLEMENT |

AK Steel Corporation moves for final approval of the parties' proposed Settlement

Agreement preliminarily approved by the Court on November 2, 2007.  (Order Granting Joint

Motion, Doc. 58)  The objections filed in response to the proposed Settlement Agreement are

without merit.  Pursuant to Fed. R. Civ. P. 23(e)(2), AK Steel respectfully submits that following

the hearing on February 12, 2008, the Court should enter an order finding that the settlement is

fair, reasonable, and adequate, and grant the parties' motions for final approval.

Respectfully submitted,


/s/ Gregory Parker Rogers
Gregory Parker Rogers
Justin D. Flamm
Daniel J. Hoying
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838
rogers@taftlaw.com
flamm@taftlaw.com
hoying@taftlaw.com

Trial Attorneys for Defendant
AK Steel Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DISVISION

| | | |
|---|---|---|
| MICHAEL BAILEY, et al., | **:** | Case No. 1:06cv468 |
| | **:** | |
| Plaintiffs, | **:** | Magistrate Judge Black |
| | **:** | |
| v. | **:** | |
| | **:** | |
| AK STEEL CORPORATION, | **:** | |
| | **:** | |
| Defendant. | **:** | |

**DEFENDANT AK STEEL CORPORATION'S RESPONSE TO OBJECTIONS
AND MEMORANDUM IN SUPPORT OF ITS MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

Gregory Parker Rogers
Justin D. Flamm
Daniel J. Hoying
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838
rogers@taftlaw.com
flamm@taftlaw.com
hoying@taftlaw.com

Trial Attorneys for Defendant
AK Steel Corporation

# TABLE OF CONTENTS

Page

I. INTRODUCTION…………………………………………………….......  1

II. STATEMENT OF FACTS……………………………………………..  2

    A. Factual Background:  AK Steel Announces Changes To Its
    Retiree Insurance Benefit Plans As A Key Part Of Its Plan
    To Attain A Competitive Cost Structure…………………………..  2

    B. Procedural Background:  The District Court Enters A
    Preliminary Injunction And AK Steel Appeals…………………….  4

    C. With The Assistance of Judge Barrett, The Parties Engage In
    Intensive, Arm's Length Negotiations……………………………..  5

    D. The Parties Agree To Settle The Case By Establishing A VEBA
    Trust Funded By A $663 Million Contribution From The
    Company…………………………………………………………...  7

    E. The Court Certifies The Classes And Preliminary Approves The
    Settlement………………………………………………….......  7

    F. Notice Of The Settlement Agreement Is Sent To The Class
    Members And Appropriate State And Federal Officials………………  8

III. ARGUMENT……………………………………………………..  9

    A. The Legal Standard For Approving A Class Action Settlement…………  9

    B. The Settlement Is Fair, Reasonable, And Adequate……………………..  10

        1. The Settlement Provides Fair Value To Plaintiffs
        Considering The Relative Merits Of The Case,
        And The Risk, Length, And Expense Of Further
        Litigation……………………………………………………  10

            a. By Settling The Case, Plaintiffs Eliminate
            The Risk That AK Steel Could Prevail On
            The Merits And Unilaterally Modify Or
            Terminate The Retiree Insurance Plan…………………..  11

            b. The Settlement Provides A Tremendous
            Benefit To The Class……………………………………  13

i

2.    The Parties Negotiated The Settlement With The Assistance Of The District Court; There Is No Risk Of Fraud Or Collusion……………………………………………… 14

3.    The Settlement Is Based On Adequate Information, Discovery, And Evidence…………………………………………… 15

4.    The Judgment Of Experienced Counsel Supports Approval Of The Settlement Agreement……………………….. 15

5.    The Settlement Is Fair To Absent Class Members And Serves The Public Interest…………………………………….. 16

C.    The Class Overwhelmingly Supports The Settlement…………………… 18

1.    Less Than Five Percent Of Class Members Filed A Timely Objection………………………………………………… 18

2.    The Objections Are Without Merit……………………………… 20

a.    The Parties' Dispute Over Whether The Retirees' Benefits Are Vested Can Be Settled; A Mere Belief That The Benefits Were Vested Is Not A Meritorious Objection Warranting Disapproval Of The Settlement…………………………. 21

b.    The Amount The Company Agreed To Contribute To The VEBA Is Within The Range Of Reasonableness……………………………….. 22

c.    The Plan Of Benefits Proposed Is Fair And Reasonable………………………………………………. 24

d.    Class Certification Under Rule 23(b) Was Appropriate; Individual Class Members Have No Right To Opt Out Of The Settlement……………….. 25

e.    AK Steel Would Not Have Been Able To Fund A VEBA Settlement If It Was On The Verge Of Bankruptcy…………………………………… 28

f.    The Settlement Agreement Does Not Chill Class Members' Right To Appeal……………………….. 28

IV.    CONCLUSION…………………………………………………………….. 30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BAILEY, et al., | : | Case No. 1:06cv468 |
| | : | |
| Plaintiffs, | : | Magistrate Judge Black |
| | : | |
| v. | : | |
| | : | DEFENDANT AK STEEL |
| AK STEEL CORPORATION, | : | CORPORATION'S RESPONSE TO |
| | : | OBJECTIONS AND MEMORANDUM |
| Defendant. | : | IN SUPPORT OF ITS MOTION FOR |
| | : | FINAL APPROVAL OF CLASS |
| | : | ACTION SETTLEMENT |

## I.   <u>INTRODUCTION</u>

The terms of the proposed Settlement Agreement are fair, reasonable, and adequate. Defendant AK Steel Corporation ("AK Steel" or "the Company") respectfully submits that the Court should grant the parties' motions for final approval.

On November 2, 2007, the Court preliminarily approved the Settlement Agreement, finding that the settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies.  (Order Granting Joint Motion, Doc. 58 at 2)

The class overwhelmingly supports settlement in this case.  Fewer than five percent of class members submitted timely objections to the Settlement Agreement.  This response and the record support the Court's initial assessment.  The settlement is fair, reasonable, and adequate. After the fairness hearing on February 12, 2008, the Court should grant the motion for final approval.

## II.

## STATEMENT OF FACTS

**A.    Factual Background:  AK Steel Announces Changes To Its Retiree Insurance Benefit Plans As A Key Part Of Its Plan To Attain A Competitive Cost Structure.**

AK Steel is an integrated steel manufacturer headquartered in West Chester, Ohio, and it employs approximately 6,900 people, with plants in Ohio, Kentucky, Pennsylvania and Indiana. AK Steel's largest steelmaking and finishing facility is its Middletown Works in Middletown, Ohio.  (Tim Perkins Decl., attached to Doc. 16, ¶ 2)  The Plaintiff classes consist of more than 4,800 hourly and salaried auxiliary retirees[1] from the Middletown Works.  (Pls' Mot. For Class Certification, Doc. 50 at 10)

The steel industry historically has been a cyclical industry.  (Roger Newport Decl., ¶ 5) When the price of steel is high and major steel markets such as automotive or housing markets remain strong, then steel companies typically report good financial results.  (*Id.*)  But when the price of steel falls, major steel markets such as automotive or housing markets experience a downturn, or raw material or energy input costs rise disproportionately to steel pricing, steel companies which do not have a competitive cost structure have been known to fail and go out of business.  (*Id.*)

Currently the steel industry is in a cycle of relative high pricing and reasonably strong market conditions, but this has not always been the case.  (Newport Decl., ¶ 6)  A downturn in the steel industry from 1999-2003 caused more than 40 steel companies to declare bankruptcy, including among others, LTV Steel Corporation, Bethlehem Steel Corporation, and National Steel Corporation.  (*Id.*, ¶ 5)  These 40-plus companies did not have competitive cost structures

---

[1]    The hourly class is those who retired from January 1, 1950 to May 31, 2007 and surviving spouses of deceased retirees from that group.  The salaried auxiliary class is those who retired from January 1, 1984 to May 31, 2007 and surviving spouses of deceased retirees from that group.

that enabled them to survive the downturn.  (*Id.*)  These bankruptcies were devastating to many.
LTV, Bethlehem, and National alone left more than 250,000 retirees without any medical
insurance from their former employers.  (*Id.*)

In today's global economy, AK Steel must compete with other U.S. steel companies that
do not have the same magnitude of retiree health costs that it has and with international
competitors that have no such liabilities.  (Newport Decl., ¶ 6)  To compete effectively with
these other steel companies, AK Steel must have a competitive cost structure.  This is
particularly true during a down cycle in the steel industry, when prices are typically at their
relative lowest and companies with high cost structures cannot sell steel at a high enough price
even to cover their costs, much less to make a profit.  Having learned from the failures of more
than 40 other steel companies during the last downturn, AK Steel embarked on a cost-reduction
strategy that will put it in the best shape possible to weather whatever storms will come -- and
come they surely will.  (*Id.*)  As a part of this strategy, on June 1, 2006, the Company announced
unilateral changes to its insurance plan for Middletown Works hourly and salaried auxiliary
retirees to be effective October 1, 2006, a plan known as the Insurance Benefits Plan.  (Lawrence
Zizzo Decl., attached to Doc. 17, ¶ 8)  AK Steel believed then, and it still believes, that under the
applicable collective bargaining agreements and plan documents, it unilaterally may terminate or
modify retiree insurance benefits.  (*Id.*; Richard Ford Decl., ¶ 3)  The only mention of insurance
in the applicable collective bargaining agreement permits the Company to terminate the
Insurance Benefits Plan.  (*Id.*)

If the Company prevails in this case, it may terminate all retiree insurance at issue in the
litigation.  (Newport Decl., ¶ 4)  If the Plaintiffs win, they would get an order for the Company to

provide insurance, but such an order would be of little value to them if the Company, in the long term, becomes unable to pay for such benefits.  (*Id.*)

**B.  Procedural Background:  The District Court Enters A Preliminary Injunction And AK Steel Appeals.**

Plaintiffs filed this lawsuit in July 2006, and they later filed a motion for a preliminary injunction to prevent AK Steel from making any changes to benefits for hourly retirees. (Compl., Doc. 1; Pls' Mot. For Prelim. Inj., Doc. 11)  On September 22, 2006, the Court granted the motion and enjoined the Company "from making any changes to the medical and prescription drug benefit plans and life insurance benefits" for the hourly retirees.  (Amend. Prelim. Inj., Doc. 34)  The Court's Order did not affect AK Steel's ability to change the insurance benefits for salaried auxiliary retirees, and they were changed.  (Order Granting Motion To Amend/Correct, Doc. 33; Ford Decl., ¶ 2)

AK Steel took an immediate interlocutory appeal of the District Court's preliminary injunction to the United States Court of Appeals for the Sixth Circuit.  (AK Steel Notice of Appeal, Doc. 29)  On appeal, AK Steel argued that the District Court erred because the collective bargaining agreement expressly permitted the Company to terminate the Insurance Benefits Plan, which provides the retiree insurance.  (Br. of AK Steel Corp. at 1, *Bailey v. AK Steel Corp.***,** App. No. 06-4279 (6th Cir. Sept. 28, 2006))  AK Steel argued that the Court further erred in granting the preliminary injunction as to post-January 1, 2003 retirees who had been issued a Summary Plan Description with a clause reserving the Company's right to modify or terminate retiree benefits.  (*Id.*)  After the briefing and the oral argument on July 24, 2007, the Company was confident that the Sixth Circuit would dissolve the injunction with respect to those who retired on and after January 1, 2003, and further believed that the it had a strong position that the injunction should be dissolved in its entirety.  (Gregory Rogers Decl., ¶ 4)

### C.  With The Assistance Of Judge Barrett, The Parties Engage In Intensive, Arm's Length Negotiations.

While its appeal was pending, the Company continued to defend against Plaintiffs' claims in the District Court.  (Rogers Decl., ¶ 4)  The parties requested and exchanged extensive written discovery.  (*Id*.)  At last count, AK Steel produced 3,465 pages of documents in this case, Plaintiffs produced 2,253 pages, and the retirees' Union produced 697 pages in response to a subpoena from the Company.  (*Id*.)  The parties identified thousands of other pages of documents that each already had in their possession.  (*Id*.)  AK Steel deposed the class representatives, individuals who submitted declarations in support of the preliminary injunction, and other current and former Union officers and employees.  (*Id*.)  Plaintiffs deposed current and former AK Steel benefits administrators and industrial relations personnel and negotiators.  (*Id*.)  At every stage, this case was vigorously litigated by adverse and informed parties.  (*Id*.)

At the suggestion of Judge Barrett, the parties entered into settlement discussions on July 25, 2007, the day after the Sixth Circuit oral argument.  (Rogers Decl., ¶ 5)  Judge Barrett personally mediated the discussions.  (*Id.*)

One way to resolve the retiree insurance problem facing the Company and to benefit the Plaintiff classes was to establish and fund a tax-exempt employee welfare benefit fund, known under Section 501(c)(9) of the Internal Revenue Code as a Voluntary Employees' Beneficiary Association ("VEBA").  By this vehicle, retirees receive a dedicated VEBA fund to pay for their benefits, and the responsibility for providing the benefits then rests solely with the VEBA.  Any benefit liability is transferred to the VEBA in return for the Company's obligation to fund it.  To date, Ford, General Motors, Chrysler, Dana, and Goodyear all have entered into agreements to shift retiree health benefits and obligations into a VEBA, and some of the agreements are in the process of being approved as class action settlements.  *See, e.g.*, Order Granting Parties' Motion

For Preliminary Approval Of Class Action Settlement, *Redington v. Goodyear Tire & Rubber Co.*, Case No. 5:07-cv-1999, Doc. 33 (N.D. Ohio Dec. 14, 2007); Scheduling Order, *UAW v. General Motors Corp.*, Case No. 2:07-cv-14074, Doc. 22 (E.D. Mich. Nov. 21, 2007); Compl., *UAW v. Ford Motor Company*, Case No. 2:07-cv-14845, Doc. 1 (E.D. Mich. Nov. 9, 2007).

The Company suggested the idea of entering into a VEBA-type of settlement, where the Company would fund a VEBA trust and allow representatives on behalf of the retirees to manage the fund and to decide upon a plan of benefits and to administer the plan.  (Rogers Decl., ¶ 5) The Company is currently in a financial position to be able to fund a substantial settlement. (Newport Decl., ¶ 6)

Plaintiffs' counsel hired an actuarial firm to study the Company's proposal.  (Rogers Decl., ¶ 7)  AK Steel arranged to provide information to Plaintiffs' actuary so it could assist Plaintiffs and their counsel to evaluate the Company's offer.  (*Id.*)  The parties adjourned their initial settlement conference with Judge Barrett to allow the Plaintiffs time to work with their actuary to develop a plan of benefits which the Plaintiffs believed would be acceptable and to evaluate what it would cost to fund such a plan through a VEBA.  The Company provided information to Plaintiffs' actuary, but otherwise had no involvement whatsoever in the development of the plan of benefits which would be funded through the VEBA.

The parties reconvened with Judge Barrett on September 21, 2007 to engage in further settlement discussions.  (Rogers Decl., ¶ 8)  Most of the named Plaintiffs were present, as were Frank Martorana and David Cook, as well as their actuary.  (*Id.*)  The parties met in separate rooms with the Judge shuttling in between, conveying settlement positions and mediating.  (*Id.*) After substantial back and forth discussion with the Judge, the parties reached an agreement in principle to settle the dispute by establishing and funding a VEBA, which would assume all

liability for retiree insurance for the classes.  (*Id.*)  This agreement in principle was then reduced to writing which was the result of more substantial discussion and back and forth between counsel.  (*Id.*)  The agreement finally reached was then presented to the parties for their signatures and it finally was executed on or about October 6, 2007.  (*Id.*)

**D.      The Parties Agree To Settle The Case By Establishing A VEBA Trust Funded By A $663 Million Contribution From The Company**

Under the proposed settlement, AK Steel will transfer cash payments of six hundred sixty-three million dollars ($663,000,000.00) to the VEBA.  (Settlement Agreement, attached to Doc. 51, § VII)  The funds will be used to provide health and welfare benefits to class members under the new plan of benefits developed by Plaintiffs and their actuary.  That plan -- and any subsequent modifications to it -- will be administered by the trustees selected by the class representatives.  (*Id.* at § VII(3.1.1))  In exchange, the class members agree to release AK Steel from responsibility for any health and welfare benefits incurred on and after the effective date of the settlement, including any and all claims for payment of medical benefits, major medical benefits, managed care benefits, prescription drug benefits, premium reimbursement, life insurance benefits, dental insurance benefits, or vision insurance benefits.  (*Id.* at § VII(4))

**E.      The Court Certifies The Classes And Preliminarily Approves The Settlement.**

On November 1, 2007, the Court granted Plaintiffs' renewed motion for class certification.  (Order, Doc. 55)  The Court certified two classes:  (1) Middletown Works hourly retirees who were eligible to participate in the retiree insurance plan and who retired from the Company between January 1, 1950 and May 31, 2007, and (2) Middletown Works salaried auxiliary retirees who were eligible to participate in the retiree insurance plan and who retired from AK Steel between January 1, 1984 and May 31, 2007.  (*Id.* at 1-2)  Surviving spouses of deceased retirees who were eligible to participate in the Surviving Spouse Benefit also were

included.  The Court held that all the requirements for class certification under Rule 23(a) and Rule 23(b)(2) had been met.[2]  (*Id.*)

On November 2, 2007, the Court held a hearing on the parties' joint motion for preliminary approval of the Settlement Agreement.  (Minute Entry, Doc. 57)  "[B]ased on the arguments and evidence presented at the preliminary approval hearing," the Court found that the proposed settlement "falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies."  (Order Granting Joint Mot., Doc. 58)

> **F.    Notice Of The Settlement Agreement Is Sent To The Class Members And Appropriate State And Federal Officials.**

On October 29 and 30, 2007, AK Steel sent notice of the proposed settlement to appropriate state and federal officials to comply with the 90-day notice period required under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).[3]  (Rogers Decl., ¶ 9)  AK Steel sent notice of the settlement to the Attorney General of the United States, the United States Secretary of Labor, and state attorneys general, state departments of labor, and other appropriate state officials in each of the 32 states where class members reside.  (*Id.*)

In the Order preliminarily approving the settlement, the Court also approved the notice to class members.  (Order Granting Joint Mot., Doc. 58)  The notice described the terms of the Settlement Agreement in plain language, and included a complete copy of the Settlement Agreement, a complete copy of the agreement establishing the VEBA trust, and four charts

---

[2]    Citations in this motion and memorandum are to the revised Federal Rules of Civil Procedure, which became effective December 1, 2007.

[3]    Under CAFA, an order granting final approval of a proposed class settlement may not be issued earlier than 90 days after the appropriate federal and state officials have been served.  28 U.S.C. § 1715(d).  In this case, AK Steel served all appropriate federal and state officials by October 30, 2007, and the Court can enter a final order of approval on any date after January 28, 2008.  (Rogers Decl., ¶ 9)

describing the plan of benefits the VEBA trust initially will provide.  (Notice Of Proposed

Settlement, attached to Doc. 51)  AK Steel retained the Garden City Group, a nationally

prominent class action services provider, to administer the printing and mailing of the class

notices.  (Jennifer Keough Decl., Doc. 93, ¶ 2)  On November 9, 2007, Garden City sent the

notice packet to the last known addresses of all 4,872 members of the class.  (*Id.*, ¶ 4)

### III.     ARGUMENT

#### A.     The Legal Standard For Approving A Class Action Settlement.

Under Rule 23(e)(2), a class action settlement requires a district court's approval after a

hearing and after the court has found that the settlement is fair, reasonable, and adequate.  "In

making this determination, the court evaluates the proposed class action settlement in light of the

general federal policy favoring the settlement of class actions."  *IUE-CWA v. General Motors

Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006); *In re Telectronics Pacing Sys., Inc.*, 137

F. Supp. 2d 985, 1008-09 (S.D. Ohio 2001) (noting the "strong presumption" in favor of

settlement).

Several factors "guide the inquiry" in the Sixth Circuit:  the risk of fraud or collusion; the

complexity, expense, and likely duration of the litigation; the amount of discovery engaged in by

the parties; the likelihood of success on the merits; the opinions of class counsel and class

representatives; the reaction of absent class members; and the public interest.  *UAW v. General

Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *Hainey v. Parrott*, 2007 WL 2752375, at *3

(S.D. Ohio 2007).

**B.**     **The Settlement Is Fair, Reasonable, And Adequate.**

This settlement is fair, reasonable, and adequate because:

(1)     The settlement provides tremendous value to the class considering the relative merits of the case;

(2)     There is no risk of fraud or collusion;

(3)     The parties were well-informed because they engaged in extensive discovery and Plaintiffs used an experienced actuarial consultant to assist them;

(4)     Experienced counsel support the settlement;

(5)     The settlement is fair to absent class members and is in the public interest.

In addition to these factors, none of the objections that have been filed should dissuade the Court from approving the settlement.  After the hearing on February 12, 2008, the Court should grant this motion for final approval of the Settlement Agreement.

      **1.**     **The Settlement Provides Fair Value To Plaintiffs Considering The Relative Merits Of The Case And The Risk, Length, And Expense Of Further Litigation.**

The claims in this case are sharply disputed.  *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute.").  The Court's role is not to "decide the merits of the case or resolve unsettled legal questions," but rather to weigh "the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."  *Id.* (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).  Based on the uncertainty of Plaintiffs' claims, and the complexity and magnitude of the litigation, the proposed Settlement Agreement is more than fair.

a.    **By Settling The Case, Plaintiffs Eliminate The Risk That AK Steel Could Prevail On The Merits And Unilaterally Modify Or Terminate The Retiree Insurance Plan.**

If this case proceeded to trial, AK Steel believes that it would prevail.  (Rogers Decl., ¶ 4)  Plaintiffs' burden would be to show that under the applicable collective bargaining agreement and plan documents their benefits are vested for life.  In *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) (en banc), the Sixth Circuit emphasized that vesting requires permanence:  "To vest benefits is to render them forever unalterable."  *Id.* at 400; *UAW v. General Motors Corp.*, 497 F.3d 615, 632-33 (6th Cir. 2007) (discussing potential impact of *Sprague* on GM and Ford retirees).  Should AK Steel show that the benefits are not "forever unalterable," Plaintiffs could not prevail on their claims.

The benefits are not "forever unalterable" under the collective bargaining agreements between AK Steel and the Union.  The collective bargaining agreements always have stated that insurance benefits can be terminated, a fact that precludes any claim that the benefits were unalterable.  *See UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983) ("Any such surviving benefit must necessarily find its genesis in the collective bargaining agreement.").  The insurance article in the collective bargaining agreement has remained essentially the same since 1969 and ***expressly provides for the termination of insurance benefits***.  The November 1, 1999 agreement, for example, provides in relevant part:

> Section C-- Termination:  Notwithstanding the provisions of Article XXVI of this Agreement [the general duration provision], ***the Insurance Benefits Plan shall remain in effect*** until July 31, 2006 and thereafter ***subject to the right of either party to terminate*** on 120 days' written notice served on or after April 3, 2006.

(Ford Decl., ¶ 3, Attach. 1; Perkins Decl., Doc. 17, Ex. A, Art. XXIII, pp. 156-57) (emphasis added).  AK Steel provided 120 days' written notice on June 1, 2006 of its intent to terminate

effective October 1, 2006.  (Zizzo Decl., attached to Doc. 17, ¶ 8; Exs. 1, 2)  No other provision

of the collective bargaining agreement describes the duration of insurance.  (Ford Decl., ¶ 3)

The relevant plan documents confirm that retiree insurance is a part of this Insurance

Benefits Plan that can be unilaterally terminated.  The summary plan descriptions ("SPDs")

periodically issued to describe the insurance benefits expressly state that retiree insurance is a

part of the "Insurance Benefits Plan" provided by the collective bargaining agreement:

> This booklet contains a general description of the AK [or Armco]
> Steel Company Plan which includes hospital, physicians' services,
> major medical and dental benefits for Long Term Disability
> Benefits recipients and certain pensioners and surviving spouses
> ***provided through the AK [or Armco] Steel Company Insurance***
> ***Benefits Plan***.

(Jennifer Simon Decl., attached to Doc. 11, Ex. 5(a) at 3; Ex. 5(b) at 3; Ex. 5(c) at 3; Ex. 5(d) at

3; Judith Stewart Decl., attached to Doc. 17, ¶ 4) (emphasis added).

For post-December 2002 retirees, success on the merits is even less likely because the

Company published a new SPD for retirees in 2003 with a reservation of rights clause that

expressly allowed the Company unilaterally to amend, suspend, or terminate the Insurance

Benefits Plan.  (Compl., Doc. 1, ¶ 13; Answer, Doc. 14, ¶ 13; Johnson Decl., attached to Doc.

17, ¶ 3)  The reservation of rights in the 2003 SPD states that:

> AK Steel Corporation has every intention of continuing the Plan,
> but the company through the action of the Benefit Plans
> Administrative Committee, reserves the right to amend, suspend or
> terminate the Plan or any premium payments and contributions on
> your behalf, in whole or in part for any reason.  This may be done
> without the consent of any employee, beneficiary or any other
> person.

(Simon Decl., Doc. 11, Ex. 3 at 11)  Had this case proceeded to trial, AK Steel believes the Court

would have found that AK Steel had the right to modify or terminate insurance benefits for all of

its retirees.  (Rogers Decl., ¶ 4)

b.    __The Settlement Provides A Tremendous Benefit To The Class.__

This type of settlement protects Plaintiffs from the danger of both losing and winning the lawsuit.  If they lose, all benefits could be terminated.  (Newport Decl., ¶ 4)  If they win, the Company would continue to be saddled with a liability that undermines its ability effectively to compete against other domestic and international steel companies which either do not have that obligation or have it to a substantially lesser degree.  For more than 40 other steel companies during the last downturn in the steel industry, that circumstance helped lead them to a condition in which they could no longer provide health care benefits to their retirees.  (*Id.*, ¶ 5)

Considering the relative merits of the case and the complexity and cost of this litigation, the settlement provides substantial benefits to the class members.  Under the terms of the settlement, AK Steel will make a contribution of $468 million to the VEBA within two business days after the effective date.  (Settlement Agreement, § 2.1.2)  Subject to the disposition of any appeals in this case, AK Steel will make additional $65 million contributions to the VEBA on the first, second, and third anniversaries of the effective date, for a total contribution of $663 million.  (*Id.* at §§ 2.1.3 - 2.1.5)

With this vast amount of money, the class representatives expect to provide a fair and reasonable plan of benefits.  (Notice Of Proposed Settlement, attached to Doc. 51 at 11-12)  Hourly retirees will have only modest cost increases and salaried auxiliary retirees will experience premium decreases from what the October 1, 2006 plan will require.  The benefits contemplated through the VEBA are more generous than the benefits negotiated by retirees at other AK Steel facilities.  (Ford Decl., ¶ 7)

The Sixth Circuit has said that settlements of this kind are "particularly sensible" considering the importance of continuing retiree insurance benefits and of getting these liabilities off a company's balance sheet.  *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir.

2007).  In the *General Motors* case, the Court reasoned that if the company prevailed, "little would stand in the way of the car companies' reducing or even eliminating the retirees' healthcare benefits in the future."  *Id.*  On the other hand, even if the retirees prevailed, "any such victory would run the risk of being a Pyrrhic one because the cost of insisting on irreversible healthcare benefits might well be -- and indeed almost certainly would be -- the continuing downward spiral of the companies' financial position."  *Id.*  Particularly for younger retirees who would have relied on AK Steel for their benefits for another 30-40 years, the settlement eliminates the risk that the benefits could ever be lost because of future Company financial difficulties.  "[I]t is well to remember that the Federal Government's Pension Benefit Guaranty Corporation, which provides *pension* guarantees for the employees and retirees of financially distressed companies, has no sister agency that provides the same guarantees for retiree *healthcare* benefits."  *Id.* (emphasis in original).

      2.      **The Parties Negotiated The Settlement With The Assistance Of The District Court; There Is No Risk Of Fraud Or Collusion.**

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement unless evidence to the contrary is offered.").  Where the Court is involved in helping the parties settle a case, there is "no risk of fraud or collusion among the parties."  *Moran v. Wunderlich*, 2007 WL 3005235, at *2 (S.D. Ohio 2007) (settlement negotiations mediated by Chief Magistrate Judge Merz were conducted at arms-length); *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 2008 WL 125798, at *13 (E.D. Mich. 2008) (in a settlement reached after "numerous and extensive mediation sessions with Judge Phillips," there is "no question" that it was negotiated at arm's length).

The settlement reached here was the result of hard negotiations over several months, the exchange and evaluation of an abundance of information, and the independent review and acceptance of the compromise by all parties.  Judge Barrett conducted two in-person mediation sessions with the parties to help them work out the agreement.  The resulting settlement is fair, reasonable, and adequate; there was no collusion.  *See, e.g.*, *White v. Morris*, 811 F. Supp. 341, 343 (S.D. Ohio 1992) ("The primary test of collusion is whether the proposed settlement itself is fair, adequate, and reasonable."); *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 152 (S.D. Ohio 1992) ("In essence, under this test, if the terms of the proposed settlement are fair, then the court may assume the negotiations were proper.").

### 3. The Settlement Is Based On Adequate Information, Discovery, And Evidence.

The extensive discovery that has taken place in this case also supports approval of the settlement.  *See In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (settlement approved where the parties were "fully knowledgeable about the facts and legal issues involved, as well as the strengths and weaknesses of their positions").  In this case, the parties did not engage in the Court-supervised mediation sessions until after they had completed discovery.  (Scheduling Order, Doc. 38)  The parties had the opportunity to brief and argue the legal issues at the preliminary injunction stage and on appeal to the Sixth Circuit.  The litigation had matured to an advanced stage, providing more than enough evidence for the Court to approve the settlement.

### 4. The Judgment Of Experienced Counsel Supports Approval Of The Settlement Agreement.

"[W]hen significant discovery has been completed [in a class action case], the Court should defer to the judgment of experienced trial counsel who ha[ve] evaluated the strength of [the] case."  *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984).  The competency

and experience of class counsel is not disputed.  Ms. Tedrow and Mr. Martorana have served as class counsel in other cases regarding alleged unilateral changes to collectively bargained retiree health care benefits and have served as lead counsel in hundreds of other labor and ERISA cases. (Decl. of Francis J. Martorana In Supp. Of Class Certification Mot., attached to Doc. 50, ¶¶ 6-7) Mr. Cook also has substantial experience in labor and benefits cases.  (Decl. of David Cook In Supp. Of Class Certification Mot., attached to Doc. 50, ¶ 7)

> **5. The Settlement Is Fair To Absent Class Members And Serves The Public Interest.**

The settlement is fair to absent class members.  The interests of absent class members are served by the protections in Rule 23(e).  Under Rule 23(e), a class action case can only be settled "with the court's approval."  Class members who are bound by the settlement proposal are entitled to "reasonable" notice.  The Court must conduct a hearing and any class member may object.  The Court must make an affirmative determination that the settlement is "fair, reasonable, and adequate."

All of the requirements of Rule 23 are satisfied here.  On November 9, 2007, all class members were sent a notice packet, including a plain language explanation of the settlement and attachments, including a full and complete copy of the settlement agreement, the plan documents for the establishment of the VEBA trust, and charts summarizing the expected benefits that will be offered under the VEBA.  (Keough Decl., Doc. 93, Ex. B)  The notice was approved by the District Court as the "best notice practicable under the circumstances."  (Order Granting Joint Motion, Doc. 58 at 2)  Consistent with the Sixth Circuit's requirements, the class notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." *General Motors*, 497 F.3d at 629.  That the notice did not convert the contributions AK Steel will make to the VEBA into present value, as some have complained, is

beside the point because the notice clearly sets forth the timeline under which AK Steel will make the payments to the VEBA.  (Class Notice, attached as Ex. 2 to Keough Decl., Doc. 93 at 6)

Rule 23 does not give class members the right to vote on a settlement agreement, though some objectors argue that the classes should have this opportunity.  This is hardly surprising because the settlement relates to benefits provided per a collective bargaining agreement which are sometimes put to a vote by the union membership.  These objections misapprehend the protections to absent class members in Rule 23.  *See UAW v. Ford Motor Co.*, 2006 WL 1984363, at *27 (E.D. Mich. 2006), *aff'd*, *UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).  "Rule 23 ensures fairness by the requirements for certification and by requiring the Court to make an independent determination that the Settlement is fair, reasonable, and adequate, not by taking a vote of class members."  *Id*.

The settlement also is in the public interest by conserving the resources of the parties and the Court and promoting the "strong public interest in encouraging settlement of complex litigation and class action suits."  *UAW v. Ford Motor Co.*, 2006 WL 1984363, at *27 (E.D. Mich. 2006), *aff'd*, 497 F.3d 615 (6th Cir. 2007); *Hainey v. Parrott*, 2007 WL 2752375, at *9 (S.D. Ohio 2007) ("Public policy generally favors settlement of class action lawsuits.").

**C.**

**The Class Overwhelmingly Supports The Settlement.**

1.      **Less Than Five Percent Of Class Members Filed A Timely Objection.**

Of the 4,872 class members, only 229 (4.7%) filed timely objections to the settlement

postmarked by December 24, 2007.  (Keough Decl., Doc. 93, ¶ 6)  As of January 17, 2008, the

Class Administrator had received a total of 451 objections.  (*Id.*)  Of these, only 278[4] were

postmarked by the December 24, 2007 deadline established by the Court.  (Order Granting Joint

Mot., Doc. 58 at 2)  The Court should not consider the 173 objections postmarked after the

December 24, 2007 deadline.[5]  "Courts frequently overrule untimely objections" on that basis

alone.  *Varacallo v. Massachusetts Mutual Life Ins.*, 226 F.R.D. 207, 246 (D.N.J. 2005) (citing

cases).  The December 24 deadline and the mailing instructions were clearly communicated to

class members in the class notice.  (Notice Of Proposed Settlement, attached to Doc. 51 at 13

("**Objections must be sent to the Claims Administrator at the following address and must**

**be postmarked on or before December 24, 2007. . .**") (emphasis in original); Order Denying

Mot. To Intervene, Doc. 84 at 12 ("The timetable established by the Court in this case is

consistent with timelines approved by federal courts in similar cases."))

Even if the Court considered the untimely objections, it should not count the duplicate

and triplicate objections sent by 19 timely and 39 untimely objectors.  (Keough Decl., Doc. 93,

¶¶ 6-7)  The Court should also disregard the 21 objections (19 timely and 2 untimely) filed by

---

[4]      Although 278 objections were timely filed, many of them were duplicates or triplicates
by the same class member or were filed by non-class members.  Only 229 different class
members filed timely objections.

[5]      Only one untimely objector offered a purported excuse for missing the Court's deadline.
(*See* Objection of Robert L. Stickelman, AKS00467 ("Note:  Filing late because of
medical reasons."))  AK Steel does not object to the Court considering Mr. Stickelman's
late-filed objection which states in relevant part, "Do not want Mr. Bailey or his group to
represent me in any situation."

individuals who are not members of the class.[6]  (*Id.*)  Even if the Court considered the objections

postmarked after December 24, 2007, only 361 (7.4%) class members object to the settlement.

Many of these did not object to the terms of the settlement, but rather only to the process -- i.e.,

they were not told of the settlement negotiations while they were ongoing and were not given a

right to vote on the settlement.  Many others objected simply because they said they believed that

their benefits could not be reduced, without any reference or apparent deference to the risks they

faced in the litigation with respect to the Company's right unilaterally to terminate their benefits.

 "Although the Court should consider objections to the settlement, the existence of

objections does not mean that the settlement is unfair. . . . [I]t is clear under the applicable law

that even majority opposition to a settlement cannot serve as an automatic bar to a settlement that

a district judge, after weighing all the strengths and weaknesses of a case and the risk of

litigation, determines to be manifestly reasonable."  *In re Telectronics Pacing Sys., Inc.*, 137

F. Supp. 2d 985, 1018 (S.D. Ohio 2001); *Heit v. Van Ochten*, 126 F. Supp. 2d 487, 491 (W.D.

Mich. 2001) ("Even a majority opposition to a proposed settlement does not automatically bar

court-approval of a proposed settlement.").

The small number of objections proves a consensus in favor of this settlement.  In an

opinion approving settlement of a similar case involving allegedly vested retiree insurance

benefits, one federal district court stressed that the number of objections should be kept in

perspective because of the importance of the subject matter of the case:

> [I]t is important to remember that this is not a small-stakes
> settlement in which, say, class members are being offered a $10
> coupon in exchange for giving up small individual claims of which
> they were probably unaware.  To the contrary, this settlement calls

---

[6]     The 21 objections filed by non-class members include objections filed by spouses of
living retirees.  Spouses of living retirees are not class members because their claim to
AK Steel benefits derives from their spouse.

> for a large reduction in health-care and life-insurance benefits for
> retirees on fixed incomes, many of whom can expect to experience
> significant hardship as a result....[I]t would not be surprising for a
> settlement of this kind to produce an avalanche of objections.

*Rexam v. United Steel Workers of Am.*, 2007 WL 2746595, at *5, 7 (D. Minn. 2007) (approving

class action settlement and finding that the percentage of objecting class members (4%) was

"relatively small").

### 2. The Objections Are Without Merit.

The objections that were filed do not provide any reason for the Court to disapprove of

the Settlement Agreement. Some of the objectors did not give a reason or simply signed their

name on a blank form with a generic objection that the settlement "does not adequately protect

the rights of the class members."[7] Of those that provided a reason or reasons for objecting, the

objections generally can be divided into one of the following categories:

(1) Retiree benefits are a contractual right for lifetime benefits;

(2) Claims of an alleged conflict of interest by class counsel representing both retirees and the current employees' Union;

(3) Insufficient contributions by AK Steel to the VEBA;

(4) Objections to the proposed administration of the VEBA trust, including objections to the selection process for trustees and the lack of a procedure to remove trustees;

(5) Objections to the details of the proposed plan of benefits;

(6) The inability of class members to opt out of the settlement agreement;

(7) Objections that the settlement should be reviewed by independent actuaries;

(8) Objections that AK Steel's financial viability is not threatened and so there is no reason for the class to settle;

---

[7] *See, e.g.*, Objections of Paul Bieller, AKS00031; David Caldwell, AKS 00052; Thomas DeHart, AKS 00087; Joyce E. Greenfield, AKS 00158; Ralph Murphy, AKS 00347; Dale Taylor, AKS00480-81; William Wood, AKS00569.

(9)   Objections that the class should have the opportunity to terminate the deal if the VEBA is not working and that AK Steel should not be able to discontinue its future liability; and

(10)  The non-involvement of objectors' counsel during the settlement negotiations; and

(11)  Objections that class members' right to appeal is chilled by the Settlement Agreement.

Class counsel is in a better position to respond to the objections in categories 2, 4, 7, and 10, and these are not addressed here.  While the Company does not believe that any objection warrants disapproval of the settlement, it submits particularly that none of the objections submitted concerning the Company and its position has any merit.

> **a.   The Parties' Dispute Over Whether The Retirees' Benefits Are Vested Can Be Settled; A Mere Belief That The Benefits Were Vested Is Not A Meritorious Objection Warranting Disapproval Of The Settlement.**

A number of objectors stated that the retiree benefits were vested contract rights which were guaranteed for life.[8]  Other objectors argued that during their employment, the Union agreed to concessions in pay and other benefits as a quid pro quo to preserving benefits.[9]  These objections represent "a disagreement over the merits of the parties' dispute and are not a basis for disapproving the settlement."  *UAW v. Ford Motor Co.*, 2006 WL 1984363, at *27 (E.D. Mich. 2006), *aff'd*, *UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).

As explained in Section III(B)(1)(a) *supra*, Plaintiffs' argument that the benefits are vested is subject to significant dispute.  The only reference to insurance in the collective bargaining agreement specifically states that the Insurance Benefits Plan, which provides the

---

[8]    *See, e.g.*, Objection of Clarence Strassburger, AKS 00471 ("I retired with full benefits and now they (AK Steel) want to change my benefits and I object to that."); Glenn M. Owens, AKS 00386 ("This is not the agreement AK promised when I retired!").

[9]    *See, e.g.*, Objection of John Baker, AKS00010 ("Years ago, we workers at Armco gave up a pay raise for paid medical health care.").

retiree benefits, can be terminated upon the type of notice provided. Also, retirees signed a form acknowledging that benefits could be changed in future contracts. (Ford Decl., ¶ 3, Attachment 2) Moreover, even were Plaintiffs likely to succeed, the law permits parties to settle so-called "meritorious" claims. *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 427 (S.D.N.Y. 2001) ("while Plaintiffs believe that their claims are meritorious, the fairness and reasonableness of the proposed Settlement in light of the risks, burdens and uncertainties of continued litigation are manifest"); *In re Newbridge Networks Sec. Litig.*, 1998 U.S. Dist. LEXIS 23238, at *6 (D.D.C. 1998) ("Counsel maintain that plaintiffs' legal claims are meritorious, but settlement forestalls the substantial and inevitable uncertainties attendant to proceeding to trial"); *see also Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) ("no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

> **b.** **The Amount The Company Agreed To Contribute To The VEBA Is Within The Range Of Reasonableness.**

Some objectors argue the $663 million that AK Steel agreed to contribute to the VEBA is not sufficient.[10] Other objectors argue that the Company should be made to contribute the entire amount of Other Than Pension Post-Employment Benefits ("OPEB") liability that it is carrying on its balance sheet.[11]

"In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation." *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 2008 WL 125798, at *10 (E.D. Mich.

---

[10] *See, e.g.*, Objection of Darrell Taylor, AKS 00482 ("Is the VEBA going to be funded enough?").

[11] *See, e.g.*, Objection of Don Even, AKS 00105 ("AK reports it has 1 billion dollars set aside for retiree benefits and is willing to give us only a little over 600 million."); Michael Halsey, AKS 00167 ("[The] fund should have 1 billion in it and AK wants to pay 600 million over a 5 year period and keep the 400 million.").

2008); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006) ("[T]here is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.").  Considering the risk that the class members could lose their benefits entirely in this litigation, or that they could lose their benefits if they win this litigation but one day AK Steel is not able to pay for them, the Company's agreement to contribute $663 million to the VEBA is more than fair.

The approximately $1 billion AK Steel is presently carrying on its balance sheet for the class members' OPEB does not mean that it has a billion dollar reserve to pay for retiree insurance benefits.  The amount of the liability is based on actuarial assumptions that take into account, among other things, the future cost of health care, and the longevity of the retirees. (Goldberg Decl., ¶ 2)

It is possible for the Company, the class members, and the objectors to come up with different valuations of the retiree benefits depending upon the assumptions used.  For example, the objectors and the class representatives disagree on what rate should be used to determine the expected investment return on the VEBA assets that will fund future retiree medical insurance claims.  AK Steel has used a 6% discount rate consistent with FAS 106 standards, which is no reflection of a return on investment assets as no assets are invested to pay for this liability.  The class representatives assumed an investment return of 7% and some objectors argue that 5% is more appropriate.  VEBA settlements usually assume a higher rate of investment return than a Company's discount rate to calculate its liability.  AK Steel notes that in the Ford and General Motors' VEBA settlements, there is an assumed rate of return of 9%.  (Newport Decl., ¶ 12)

AK Steel's contribution also falls within a range of reasonableness of other VEBA settlements that have recently been reached.  Under the proposed agreement, AK Steel is paying approximately 63% of its FAS 106 liability for the classes at issue in this matter through the proposed settlement.  Ford, General Motors, and Chrysler have agreed to similar style VEBA settlements with the United Auto Workers.  Together, the Big Three reportedly have agreed to pay $54.4 billion to eliminate an $87 billion liability, or 62.5%.  (Big Three, UAW dangle $54 B Health Fund Before Wall Street, *Daily Report*, attached as Ex. C, Doc. 53)  Ford is reported to be paying $13.6 billion to eliminate a $23.7 billion liability, or 57.4%.  (*Id.*)

### c.  The Plan Of Benefits Proposed Is Fair And Reasonable.

A number of objections address details of the proposed plan of benefits that the VEBA will provide.  As to the specific plan details, the class representatives anticipate that the $663 million contribution will be adequate to maintain a "fair and reasonable plan of benefits for the lifetimes of all class members."  (Class Notice at 10)

The objectors allege that the benefits proposed under the VEBA plan are no better than the benefits that class members would have received if AK Steel had unilaterally implemented its October 1, 2006 changes.  This is patently false.  AK Steel estimated that the October 1, 2006 plan it sought to unilaterally impose on retirees would have cost $246,715,118.  (Goldberg Decl., ¶ 3)  With $663 million, the retirees will have substantially more money to maintain a plan of benefits.  (Ford Decl., ¶ 6)  Among other reasons, the plan proposed by the VEBA is better because (1) it retains the Medicare Part B subsidy; (2) retirees are paying only ten percent of the premium instead of absorbing one hundred percent of the cost increase beginning in 2008; and (3) it retains the life insurance benefit.  (*Id.* at ¶ 5)

The VEBA proposed plan of benefits is more generous than those currently offered to the retirees at AK Steel's other plants, including Ashland, Kentucky; Butler, Pennsylvania;

Rockport, Indiana; Mansfield, Ohio; Coshocton, Ohio; and Zanesville, Ohio.  (Ford Decl., ¶ 7)

To the extent the Company offers retiree benefits at these other plants, it has capped its

contribution for future premium cost increases or has negotiated a much greater percentage of

premium sharing than the VEBA envisions Middletown Works' retirees will pay.  (*Id*.)  Over

time, Middletown Works' retirees will pay a smaller share of the premium cost than will retirees

at other AK Steel locations.  (*Id*.)

Objectors also argue that there should be a provision to terminate the VEBA and return

the liability for the insurance benefits to AK Steel if the plan is not working.  Yet AK Steel

would not have agreed to the Settlement Agreement if retirees could have terminated the VEBA

at some future date.  (Newport Decl., ¶ 10)  Although the Company still believes it could have

terminated the plans outright, the proposed settlement is an acceptable compromise because it

allows the Company to transfer all of the liability for the plans to the VEBA in exchange for the

$663 million payment.  (*Id*.)  If there were any possibility that the liability for the retiree health

plans could some day return to AK Steel, the Company would not have agreed to this settlement.

(*Id*.)

> **d.     Class Certification Under Rule 23(b) Was Appropriate;
> Individual Class Members Have No Right To Opt Out Of The
> Settlement.**

The Court appropriately granted class certification under Rule 23(b)(2).  *UAW v. General

Motors Corp.*,  497 F.3d 615, 625 (6th Cir. 2007) ("GM has threatened to modify all retiree

healthcare benefits unilaterally, 'thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole.'  [Citing Fed. R. Civ. P.

23(b)(2)] . . . [W]e see no reasonable basis [for objection]."); *Rose v. Volvo Constr. Equip. N.A.,

Inc.*, 2007 WL 893049, at *3 (N.D. Ohio 2007) (class action alleging entitlement to lifetime,

vested retiree health insurance and life insurance benefits was appropriate for Rule 23(b)(2) class certification).

Several objectors argue that the class should not have been certified under Rule 23(b)(2) because the settlement agreement provides for a monetary contribution by AK Steel, rather than injunctive relief.  (AKS00206 - 218 at 10)  The objection misapprehends Rule 23(b)(2), which provides for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class."  Fed. R. Civ. P. 23(b)(2).  It applies when "the class representative is seeking final injunctive relief or corresponding declaratory relief."  *Kutschbach v. Davies*, 885 F. Supp. 1079, 1086 (S.D. Ohio 1995).  "Rule 23(b)(2) is applicable when the court's equitable power is the primary form of relief sought."  *Id*.

In this case, Rule 23(b)(2) class certification was appropriate because the "primary form of relief" sought by Plaintiffs was injunctive or declaratory.  Plaintiffs sought an injunction "directing Defendant to rescind unilaterally announced or implemented benefit decreases and terminations and directing Defendant to maintain the status quo."  (Compl., Doc. 1 at 12)  The fact that AK Steel and the classes agreed to settle this case by AK Steel contributing money to a VEBA does not make Rule 23(b)(2) certification any less appropriate.  *See UAW v. General Motors Corp.*, 2006 WL 891151, at *31 (E.D. Mich. 2006) (settlement of retirees' class action by GM's contribution to a VEBA was proper for certification under Rule 23(b)(2) because the relief sought was injunctive or declaratory), *aff'd*, 497 F.3d 615 (6th Cir. 2007); *UAW v. Ford Motor Co.*, 2006 WL 1984363, at *33 (E.D. Mich. 2006) ("Because the claims implicated in the Settlement Agreement seek only injunctive and declaratory relief, they are ***indisputably appropriate for mandatory class treatment pursuant to Rule 23(b)(2)***." (emphasis added)), *aff'd*, 497 F.3d 615.

Some objectors have argued that they should be able to opt out of the Settlement Agreement.  It is not clear that the Court has the authority to permit individual members of the class to opt out of a class action certified under Rule 23(b)(2).  *UAW v. Ford Motor Co.*, 2006 WL 1984363, at *33 (E.D. Mich. 2006) ("Allowing class members to opt out from a unified class would necessarily mean that different retirees could have different rights under the same Ford health care plan, which would make effective declaratory or injunctive relief impossible, and would make the administration of benefits under the Settlement unworkable."), *aff'd, UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007); *Rexam v. United Steel Workers of Am.*, 2007 WL 2746595, at *6 (D. Minn. 2007).  Prudential considerations also weigh against giving class members the ability to opt out of the settlement:

> [E]ven if the Court had such authority, it would decline to permit class members to opt out.  Class members who chose to opt out would not be entitled to keep their benefits.  Instead, they would have to file a separate lawsuit, pursue years of complex and expensive litigation, [and win at trial]. . . . Permitting individual class members to opt out would also (in all likelihood) scuttle the entire settlement and thereby result in the non-objecting class members -- who are the vast majority of the class -- being put in a worse position.  The extreme odds against a class member getting a better result on his or her own cannot outweigh the non-objecting majority's interest in preserving the settlement.

*Rexam*, 2007 WL 2746595, at *6.

AK Steel did not offer to contribute $663 million to the VEBA for a partial settlement of claims with the class members.  (Settlement Agreement, attached to Doc. 51 at 18-19 ("Upon the Effective Date, the class representatives ***and each of the class members*** shall have fully, finally and forever released" their claims.  (Emphasis added)).  AK Steel would not have agreed to settle if retirees could opt out of the settlement.  (Newport Decl., ¶ 10)

**e.    AK Steel Would Not Have Been Able To Fund A VEBA
Settlement If It Was On The Verge Of Bankruptcy.**

AK Steel is not on the verge of bankruptcy and will not go bankrupt if this settlement is

not approved.  (Newport Decl., ¶ 5)  Indeed, the Company would not have been in a financial

position to contribute $663 million to the VEBA if it was struggling financially.

Nor does the fact that AK Steel is presently enjoying strong financial results mean that

there is not value for the class in settling this case through a VEBA trust.  The steel industry is

cyclical.  (Newport Decl., ¶ 5)  Forward-thinking companies, like AK Steel, take steps to manage

their cost structure when the price of steel is high, so that they improve their chances of survival

when the price of steel falls.  (*Id.*)  During the last downturn in the steel industry, more than 40

steel companies declared bankruptcy, leaving more than 250,000 retirees without any retiree

insurance from their former employers.  (*Id.*)  By banking their benefits in the VEBA, the

retirees eliminate the possibility that AK Steel one day will be financially unable to pay for the

insurance benefits or that the retirees could one day lose the benefits through bankruptcy.  (*Id.*)

As noted by the Court in approving the earlier General Motors and Ford VEBA settlements, this

represents a substantial benefit to the plaintiff classes.  *UAW v. General Motors Corp.*, 497 F.3d

615, 632 (6th Cir. 2007).

**f.    The Settlement Agreement Does Not Chill Class Members'
Right To Appeal.**

Nothing in the Settlement Agreement chills class members' right to appeal.  (Objections

of Hudson, Wagner, Magee, & White, AKS00206-00218)  Although the argument has never

been fully articulated, the objection presumably relates to the provision in the Settlement

Agreement under which AK Steel will place three annual contributions of $65 million into

escrow during the pendency of any appeal in this case.

First, objectors' rights to appeal are not chilled because the provision does not result in any prejudice to the class. AK Steel is making an initial contribution to the VEBA of $468 million on the effective date of the settlement whether or not there is an appeal. (Settlement Agreement, attached to Doc. 51, §§ 2.1.2, 2.2.2) The initial payment will be more than enough to pay for benefits during the pendency of the appeal. In the event of an appeal, the three annual $65 million payments are not lost, but are placed into an escrow account. (*Id.* at §2.2.2) The class has the right to control the investment of the funds in escrow until the disposition of the appeal. (*Id.*)

Second, even if the objectors could show that their inclination to appeal is chilled by the escrow provision, the Settlement Agreement is no less fair, reasonable, and adequate. It is reasonable for AK Steel to insist that the funds be set aside in escrow during the course of an appeal, when the status of the Company's OPEB liability will remain uncertain. There is no reason that the parties cannot include a term that is contingent on whether or not an appeal is filed. *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 316 (W.D. Tex. 2007) (provision in class action settlement requiring objecting class members to post an appeal bond was not per se objectionable and did not preclude approval of settlement).

## IV.  <u>CONCLUSION</u>

For each and all of the foregoing reasons, AK Steel respectfully requests the Court to overrule the objections and grant its motion for final approval of the settlement.

Respectfully submitted,

<u>/s/ Gregory Parker Rogers</u>
Gregory Parker Rogers
Justin D. Flamm
Daniel J. Hoying
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838
rogers@taftlaw.com
flamm@taftlaw.com
hoying@taftlaw.com

Trial Attorneys for Defendant
AK Steel Corporation

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served this 28th day of January, 2008,

upon the following using the Court's CM/ECF system:

Sally Tedrow
Francis Martorana
4748 Washington Ave, N.W.
Washington, DC 20016

David M. Cook
22 West 9th Street
Cincinnati, OH 45202

Richard S. Wayne
150 East Fourth Street
Cincinnati, OH 45202-4018

Glenn V. Whitaker
221 E. Fourth Street, Suite 2000
P.O. Box 236
Cincinnati, OH 45202

/s/ Gregory Parker Rogers